IRENE IRELAND *v.* JAMES F. IRELAND
(SC 15769)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued May 26—officially released August 18, 1998

*Lori Welch-Rubin*, with whom, on the brief, was *Geraldine Battistoli*, for the appellant (plaintiff).

*Kathleen A. Hogan*, with whom, on the brief, was *Sarah S. Oldham*, for the appellee (defendant).

*Helen D. Murphy*, *Maureen M. Murphy* and *Jane K. Grossman* filed a brief for the Connecticut Women's Education and Legal Fund as amicus curiae.

*Opinion*

KATZ, J. This certified appeal arises out of the trial court's denial of the motion by the plaintiff, Irene Ireland, seeking permission to relocate with her minor son to California and its granting of the motion by the defendant, James F. Ireland, to enjoin and restrain the relocation. The principal issue is whether the trial court correctly placed the burden on the plaintiff custodial

parent to prove that relocation would be in the best interests of the child.

The following facts, which appear in the Appellate Court opinion, are pertinent to this appeal. "The parties' marriage was dissolved on January 30, 1990. Pursuant to the agreement of the parties that was incorporated into the dissolution decree, the court awarded joint custody of their minor son to the parties, with primary physical custody to the plaintiff. From September, 1989, until August, 1995, the order allowed the defendant to visit his son every other weekend. At the time of the dissolution, the plaintiff resided in Connecticut, and the defendant resided in Massachusetts. In 1993, the defendant remarried and settled with his wife in Fairfield county.

"The plaintiff commenced a relationship with Steven Zakar in 1992 and married him in November, 1995. Zakar is a computer consultant whose major consulting contract concluded in April, 1995. He undertook a search for additional work and secured a position in Sacramento, California. In July, 1995, the plaintiff informed the defendant of her plan to join Zakar in California with their son. In reaction to this news, the defendant obtained a temporary injunction that enjoined the plaintiff from leaving the state with the minor child . . . .

"At the three day trial commencing January 30, 1996, the trial court heard evidence and argument on the defendant's motion to enjoin and restrain and the plaintiff's motion for permission to relocate with their son. After analyzing the evidence under the best interests of the child standard, the trial court denied the plaintiff's motion and granted the defendant's motion." *Ireland* v. *Ireland,* 45 Conn. App. 423, 425, 696 A.2d 1016 (1997).

In its memorandum of decision, the trial court stated: "[R]elocation in joint custody cases must be viewed on

a case-by-case basis with attention to any manifestations of what was contemplated by the parties and the court at the time the original orders were entered, the impact the relocation will have on the minor child, the history of the nonrelocating parent and the child's relationship, the history of the relocating parent and the child's relationship, the input from the attorney for the minor child, the family relations report and the reasons offered by the relocating parent for the move. Additionally, the burden of establishing the benefits of the move must rest with the relocating parent. Underlying all of these factors is the premise that the court must base its decision on what is in the best interest of the minor child."

The plaintiff appealed from the judgment of the trial court. *Ireland* v. *Ireland,* supra, 45 Conn. App. 425. In affirming the trial court's decision, the Appellate Court first determined that the trial court had not abused its discretion in requiring the custodial parent seeking to relocate to shoulder the burden of proof as to the child's best interests. Id., 426. Next, pursuant to its supervisory authority to provide guidance to the trial courts, the Appellate Court endorsed certain criteria set forth in the widely cited case of *D'Onofrio* v. *D'Onofrio,* 144 N.J. Super. 200, 365 A.2d 27, aff'd, 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976), for determining the best interests of the child in future postjudgment relocation cases.[1] Although the *D'Onofrio* criteria differ to some

---

[1] According to the *D'Onofrio* court, in order "to accommodate the compelling interests of all of the family members" in relocation cases, a court should "consider the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children. It must evaluate the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders when she is no longer subject to the jurisdiction of the courts of this State. It must likewise take into account the integrity of the noncustodial parent's motives in resisting the removal

degree from those applied by the trial court in the present case, the Appellate Court concluded that the trial court had "essentially considered those criteria." *Ireland* v. *Ireland*, supra, 429. Finally, the Appellate Court sustained the trial court's decision refusing to allow examination by the plaintiff of the minor child's attorney, who had submitted a written report to the trial court recommending that the child's best interests would be served by his remaining in Connecticut. Id., 430.

We granted the plaintiff's petition for certification as to the following issues: "1. Did the trial court consider the correct criteria for determining the best interests of the child when the parent who was awarded primary physical custody of the child wishes to relocate?"; "2. Was the trial court correct in placing the burden of proof on the custodial parent?"; and "3. Was the trial court correct in prohibiting the custodial parent from calling the attorney for the minor child as a witness to examine him with respect to his written report filed with the court recommending that the child's best interest would be served if the child remains in Connecticut?" *Ireland* v. *Ireland*, 243 Conn. 905, 701 A.2d 330 (1997). As to the second issue, which is dispositive in this case, we conclude that the trial court improperly placed the entire burden of proof on the custodial parent and, accordingly, we reverse on that issue. In order to provide guidance to the lower courts on remand, we also address the two remaining issues. As to the first, we conclude that although the criteria considered by the trial court were in fact relevant to this case, on remand,

and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect of continuing support obligations. Finally, the court must be satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed." *D'Onofrio* v. *D'Onofrio*, supra, 144 N.J. Super. 206–207.

the court should consider the additional factors set forth in this opinion. As to the third certified issue, we conclude that the attorney for the child should not have submitted the report at issue to the trial court and, on remand, the court should not consider that report in its deliberations.

I

The issue of whether the trial court was correct in placing the burden of proof on the custodial parent is one of first impression for this court. Because this question is dispositive, we address it first.

The plaintiff argues that the trial court was incorrect in placing the "burden of establishing the benefits of the move [on] . . . the relocating parent." She asserts that such a burden allocation created an inherent presumption in favor of the noncustodial parent that relocation is not in the child's best interests. She argues further that creation of such a presumption is a departure from this court's precedent, in which we consistently have declined to impose presumptions in custodial determinations. See, e.g., *Presutti* v. *Presutti*, 181 Conn. 622, 627–28, 436 A.2d 299 (1980) (declining to impose presumption either for or against nonresident parent); *Simons* v. *Simons*, 172 Conn. 341, 350, 374 A.2d 1040 (1977) (declining to impose presumption favoring mother or presumption against modification). Finally, the plaintiff argues that placement of the burden solely on the custodial parent seeking relocation is improper, and she urges this court to adopt a burden allocation scheme that incorporates either shifting burdens of persuasion, or burdens shared by both parents.

The defendant, on the other hand, argues that the parent proposing relocation, as the party seeking to modify custody or visitation arrangements, should bear the burden of persuading the trial court that the relocation would be in the best interests of the child. The

defendant also asserts that the parent seeking reloca-
tion, having chosen the new location, is the party better
able to produce evidence regarding the potential bene-
fits that the move and the new location may offer. There-
fore, he argues that the burden of proof properly should
fall on the parent seeking relocation. We conclude that
a burden allocation scheme incorporating shifting bur-
dens, as articulated below, is appropriate in relocation
cases.

A

It is well settled in this state that, in deciding custody
or visitation issues, a court must always be guided by
what is in the best interests of the child. See *Schult* v.
*Schult*, 241 Conn. 767, 777, 699 A.2d 134 (1997); *Knock*
v. *Knock*, 224 Conn. 776, 789, 621 A.2d 267 (1993); *Yontef*
v. *Yontef*, 185 Conn. 275, 282, 440 A.2d 899 (1981). Gen-
eral Statutes § 46b-56 (b) provides in part that "[i]n
making or modifying any order with respect to custody
or visitation, the court shall (1) be guided by the best
interests of the child . . . ." Moreover, "[t]his court
has consistently held in matters involving child custody,
and, by implication, visitation rights, that while the
rights, wishes and desires of the parents must be consid-
ered it is nevertheless the ultimate welfare of the child
which must control the decision of the court." (Internal
quotation marks omitted.) *Ridgeway* v. *Ridgeway*, 180
Conn. 533, 541, 429 A.2d 801 (1980); see also *Gallo* v.
*Gallo*, 184 Conn. 36, 43, 440 A.2d 782 (1981) (in matters
regarding visitation orders, "the court considers the
rights and wishes of the parents . . . but . . . must
ultimately be controlled by the welfare of the particu-
lar child").

Unlike some of our sister states,[2] Connecticut has
no statute specifically governing situations in which a

[2] See Ariz. Rev. Stat. Ann. § 25-408 (C) (1) (West Sup. 1997); Cal. Fam.
Code § 7501 (Deering 1996); Ind. Code § 31-17-2-23 (1997); Kan. Stat. Ann.
§ 60-1620 (1994); Mass. Gen. Laws Ann. c. 208, § 30 (West 1994); Minn. Stat.

custodial parent wishes to relocate with his or her child. Yet, as noted, our statutes expressly mandate that judicial determinations regarding child custody and visitation matters are to be governed by the best interests of the child. This clear legislative policy, in conjunction with the legislature's silence on relocation issues, presents this court with the opportunity to exercise its common-law adjudicatory authority. In other contexts, we have " 'looked to statutes as a source of policy for common-law adjudication, particularly where there is a close relationship between the statutory and common-law subject matters. See *Fahy* v. *Fahy*, 227 Conn. 505, 514–16, 630 A.2d 1328 (1993).' " *State* v. *Guess*, 244 Conn. 761, 779, 715 A.2d 643 (1998), quoting *Newman* v. *Newman*, 235 Conn. 82, 100, 663 A.2d 980 (1995). We believe the case before us presents an appropriate instance to again use this adjudicatory technique.

Clearly, there is a very close relationship between the protection of the interests of children in custody and visitation matters and the interests of children in relocation cases. The only difference relevant to this discussion is that the former are expressly protected by statute whereas the latter are protected by interpretation of the policy behind the statutes. "Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent . . . courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." (Citations omitted.) *Fahy* v. *Fahy*, supra, 227 Conn.

Ann. § 518.175 (3) (West 1990); Mo. Rev. Stat. § 452.377 (1994); Mont. Code Ann. § 40-4-217 (1997); Nev. Rev. Stat. § 125A.350 (1997); N.J. Stat. Ann. § 9:2-2 (West 1993); N.C. Gen. Stat. § 50-13.2 (c) (1995); N.D. Cent. Code Ann. § 14-09-07 (Michie 1997); Okla. Stat. Ann. tit. 10, § 19 (West 1998); Or. Rev. Stat. § 107.159 (1995); S.D. Codified Laws § 25-5-13 (Michie 1992); Utah Code Ann. § 30-3-37 (1) (1995); Va. Code Ann. § 20-124.5 (Michie 1995); Wis. Stat. § 767.327 (Sup. 1997).

513–14. We believe that by exercising our common-law adjudicatory authority in creating the burden shifting scheme articulated in the following paragraphs, we have furthered our commitment to the best interests of the child standard, thus remaining faithful to both our statutes and our precedent.

## B

We recognize the difficult issues that relocation cases present. The interests of the custodial parent who wishes to begin a new life in a new location are in conflict with those of the noncustodial parent who may have a strong desire to maintain regular contact with the child. At the heart of the dispute is the child, whose best interests must always be the court's paramount concern. Those interests do not necessarily coincide, however, with those of one or both parents.

Historically, most states have discouraged the relocation of a custodial parent with minor children, in part, to protect and preserve the children's relationship with the noncustodial parent, under the assumption that it is in a child's best interests to live near both biological parents.[3] A growing number of states now presume, however, that the custodial parent's good faith decision to relocate *is* in the best interests of the child.[4]

---

[3] Another common rationale for disallowing relocation of a custodial parent and his or her child is the desire of the court system to retain jurisdiction over matters involving the child. See, e.g., *Auge* v. *Auge*, 334 N.W.2d 393, 399 (Minn. 1983) ("[i]n the past, removal was commonly denied because of the potential loss of jurisdiction over custody issues"); *In re Marriage of Francis*, 919 P.2d 776, 784 (Colo. 1996) ("[i]nitially, courts discouraged removal in part to promote a meaningful relationship between the child and the non-custodial parent and in part to avoid disputes over the appropriate jurisdiction of the court prior to passage of the Uniform Child Custody Jurisdiction Act").

[4] See, e.g., *In re Marriage of Burgess*, 13 Cal. 4th 25, 913 P.2d 473, 482–83 and n.10, 51 Cal. Rptr. 2d 444 (1996) (overruling precedent that placed burden on custodial parent to justify proposed move as "necessary" or "essential and expedient"); *Bernick* v. *Bernick*, 31 Colo. App. 485, 487–88, 505 P.2d 14 (1972) ("in the absence of a clear showing to the contrary,

The realities of divorce make clear that the dissolution of a marriage between parents of a minor child inevitably alters the character of the parental relationships of both the custodial parent and the noncustodial parent. It may not be realistic to try to preserve completely the quality and nature of the relationship that the noncustodial parent enjoyed with the child, especially if such preservation is maintained at the cost of the custodial parent's ability to start a new, potentially improved life for herself or himself and the child. Consequently, many states now recognize that marriage dissolution results in the creation of a new family unit, consisting of the custodial parent and the child, and that what is beneficial to that unit as a whole benefits its individual members. See, e.g., *D'Onofrio* v. *D'Onofrio*, supra, 144 N.J. Super. 206. Although the noncustodial parent's interests certainly retain great importance; *Ascuitto* v. *Farricielli*, 244 Conn. 692, 701–703, 711 A.2d 708 (1998) (recognizing importance of familial relationship between noncustodial parent and child in context of parent-child immunity); the child's interests can become so intricately "interwoven with the well-being of the new family unit that 'the determination of the child's best interest requires that the interests of the custodial parent be taken into account.' " *In re Marriage of Francis*, 919 P.2d 776, 784 (Colo. 1996), quoting *Cooper* v. *Cooper*, 99 N.J. 42, 54, 491 A.2d 606 (1984); see also, e.g., *Mize* v. *Mize*, 621 So. 2d 417, 419 (Fla. 1993) ("it follows" that what is good for custodial parent's well-being is good for child's well-being); *Aaby* v.

decisions of the custodial parent reasonably made in a good faith attempt to fulfill the responsibility imposed by the award of custody should be presumed to have been made in the best interests of the children"); *Tropea* v. *Tropea*, 87 N.Y.2d 727, 736–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996) (overruling previous three-tiered analysis requiring custodial parent to show "exceptional circumstances" to overcome presumption against removal of children); *Taylor* v. *Taylor*, 849 S.W.2d 319, 328 (Tenn. 1993) (removal case in which court recognized strong presumption in favor of continuity of placement in holding that relocation did not necessitate change in custody).

*Strange*, 924 S.W.2d 623, 629 (Tenn. 1996) ("the interests of the custodial parent and the interests of the child are basically interrelated, even if they are not always precisely the same").

The notion that relocation might be in the best interests of the child, in large part because such a move would also be in the best interests of the custodial parent, finds support in the writings of legal scholars. "Prohibiting a move by the custodial parent may force that parent to choose between custody of his or her child and opportunities that may benefit the family unit, including the child as well as the parent. . . . Imposing this choice can be severely detrimental to the psychological and economic well-being of the parent over many years. It also has the potential for burdening the parent-child relationship for many years, regardless of the choice the parent makes. A parent who relinquishes a significant life-enhancing opportunity in order to maintain custody of a child may become distraught and depressed. . . . The child may well experience diminished parenting as a result of the parent's discouragement and suffering. . . . The child may suffer great anguish and blame himself or herself for having stood in the way of the parent." J. Wallerstein & T. Tanke, "To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce," 30 Fam. L.Q. 305, 315 (1996).

It should be noted, however, that allowing relocation need not be only for the purpose of avoiding such negative effects. The move may offer benefits, such as the promise of economic, emotional, financial, or educational enhancement of the child's life. In other words, the prospects awaiting the custodial parent in a new location may be such that the child's best interests would be served by the custodial parent being allowed to pursue those prospects. The new location may offer

such benefits as: a better job opportunity for the custodial parent, which could improve the financial stability of the family; the opportunity for the parent to enroll in college or graduate school, which could also positively impact the family's long-term financial picture; or the possibility of remarriage, which could bestow correlative benefits upon the child, such as increased stability of the family unit and a second live-in adult to provide guidance and affection.

1

We must recognize the possibility, however, that a custodial parent could be motivated to relocate, not by a desire to build a new and better life for the child and the new family unit as a whole, but rather, for example, by a vindictive desire to interfere in the relationship between the noncustodial parent and the child. Such an improper motive should not serve as the basis for a decision to put a greater distance between a noncustodial parent and a child. Because we recognize that such situations exist, we find useful the relevant provision addressing such concerns that has been set forth by the American Law Institute in its Principles of the Law of Family Dissolution: Analysis and Recommendations (Tentative Draft No. 3, Pt. I, March 20, 1998) (Principles of the Law of Family Dissolution). The provision provides that "[a] parent who has been exercising a significant majority of the custodial responsibility for the child should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose." Id., § 2.20 (4) (a).[5] In

---

[5] The tentative draft of the Principles of the Law of Family Dissolution also provides as examples of legitimate purposes to relocate: "[T]o be close to significant family or other support networks, for significant health reasons, to protect the safety of the child or another member of the child's household from a significant risk of harm, to pursue a significant employment or educational opportunity, or to be with one's spouse [or spouse equivalent, if such is defined in Chapter 6] who is established, or who is pursuing a

accordance with that provision, a relocation motivated by a legitimate purpose should be considered reasonable "unless its purpose is shown to be substantially achievable without moving, or by moving to a location that is substantially less disruptive of the other parent's relationship to the child." Id.

The standard proposed by the American Law Institute properly places the initial burden of proof on the custodial parent, which is the party with the best access to information relevant to the legitimacy of the motives behind the planned relocation. We conclude, therefore, that the custodial parent must bear the burden of proving, by a preponderance of the evidence, that the relocation is for a legitimate purpose and, further, that the proposed location is reasonable in light of that purpose.

2

Once the custodial parent has made a sufficient showing as required, it must still be demonstrated that the relocation is in the child's best interests. The question remains as to who should bear the burden of proof on this issue. Although some states place a substantial burden on the relocating custodial parent to demonstrate the benefits that the relocation would offer the child, others apply presumptions favoring relocation. According to the American Law Institute, "[t]he clear trend has been that of increasing leniency toward the parent with whom the child has been primarily living." Principles of the Law of Family Dissolution, supra, § 2.20 (4) (a), comment (d).

significant employment or educational opportunity, in another location." Principles of the Law of Family Dissolution, supra, § 2.20 (4) (a). That section also provides that the burden of proving the legitimacy of any other purpose falls on the relocating parent. Id. Because such examples may prove instructive to our courts, we endorse them for use in relocation cases. We emphasize, however, that this list is not exclusive and that any reason or reasons considered by the trial court must be given the appropriate weight, in light of all the evidence in the case.

After careful consideration of the issue, we conclude that the noncustodial parent opposing the proposed relocation should be required to prove that the relocation is not in the child's best interests. Our reasons are twofold. First, it should be presumed that when primary physical custody was entrusted to the custodial parent, the court making that determination considered that parent to be the proper parent to make the day-to-day decisions affecting the welfare of the child. In the absence of proof to the contrary, it should not be presumed that the custodial parent would choose to uproot himself or herself and the child and move to a distant location merely to frustrate the visitation schedule of the noncustodial parent. As with other important decisions regarding the child's welfare, the custodial parent should be permitted to choose the best place for the parent and the child to live. Placing the burden on the noncustodial parent is consistent with the trust shown by the court in awarding primary physical custody in the first instance to the custodial parent. Second, as the party claiming that relocation would not be in the child's best interests, it should be incumbent upon the noncustodial parent to demonstrate the reasons supporting that assertion. The noncustodial parent is the party most likely to have access to information such as distance, time or financial restraints that could impact his or her potential postrelocation visitation schedule. Additionally, the noncustodial parent is in the best position to prove that any change in the quantity or nature of contact between that parent and the child as a result of the move would be so detrimental to the best interests of the child that the relocation itself would not be in the child's best interests.

Our society is an increasingly mobile one. Largely "[b]ecause of the instability and unpredictability of the employment market . . . the high incidence of remarriage, and the high incidence of second divorces,

repeated, separate moves by each parent are coming to represent the norm." J. Wallerstein & T. Tanke, supra, 30 Fam. L.Q. 310. Our family law should recognize that reality. Therefore, to serve the best interests of a child in a single parent family unit, the custodial parent should be permitted to pursue, within reasonable limits, opportunities that could lead to a better life for the parent as well as the child.

It should be noted that there are no constraints, beyond the conscience of the noncustodial parent, prohibiting that parent from relocating wherever he or she chooses, even if the new location is geographically distant from the child's residence. In *D'Onofrio* v. *D'Onofrio*, supra, 144 N.J. Super. 207–208, one of the leading relocation cases, the court addressed this notion: "[A] noncustodial parent is perfectly free to remove himself from [a] jurisdiction despite the continued residency [there] of his children in order to seek opportunities for a better or different life style for himself. And if he does choose to do so, the custodial parent could hardly hope to restrain him from leaving [the] State on the ground that his removal will either deprive the children of the [parental] relationship or depreciate its quality. The custodial parent, who bears the essential burden and responsibility for the children, is clearly entitled to the same option to seek a better life for herself and the children, particularly where the exercise of that option appears to be truly advantageous to their interests and provided that the . . . interest [of the noncustodial parent] can continue to be accommodated, even if by a different visitation arrangement than theretofore." We likewise believe that a custodial parent with potentially bright prospects on a distant horizon should not be tethered indefinitely to the noncustodial parent's choice of residence, as long as the proposed relocation is in the best interests of the child. For the

foregoing reasons, we conclude that the burden of proving that the relocation would not be in the best interests of the child should fall on the noncustodial parent opposing the relocation.

In summary, we hold, therefore, that a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child.[6]

---

[6] This analytical approach mirrors that followed by the Colorado Supreme Court in 1996, in *In re Marriage of Francis*, supra, 919 P.2d 776. There, the court held that, in removal cases, "the custodial parent must present a prima facie case showing that there is a sensible reason for the move. . . . Once the prima facie case has been made, a presumption allowing the child to remain with the custodial parent arises and the burden shifts to the noncustodial parent to show that the move is not in the best interests of the child." (Citation omitted.) Id., 784–85.

Several other states have established burdens of proof or presumptions that require the noncustodial parent to demonstrate that the proposed relocation is not in the best interests of the child. See, e.g., *In re Marriage of Burgess*, 13 Cal. 4th 25, 913 P.2d 473, 482–83, 51 Cal. Rptr. 2d 444 (1996) (placing burden on noncustodial parent to show move will be harmful to child); *Sefkow v. Sefkow*, 427 N.W.2d 203, 214 (Minn. 1988) (removal allowed absent showing by noncustodial parent that such action would endanger child's well-being); *Aaby v. Strange*, supra, 924 S.W.2d 629–30 (relocation allowed unless noncustodial parent proves that relocation is motivated by desire to defeat visitation rights or poses danger to well-being of child); *Lane v. Schenck*, 158 Vt. 489, 499, 614 A.2d 786 (1992) (relocation must be allowed unless noncustodial parent proves that best interests of child would be "so undermined by a relocation . . . that a transfer of custody is necessary"); but see, e.g., *Pollock v. Pollock*, 181 Ariz. App. 275, 277, 889 P.2d 633 (1995) (placing burden regarding best interests of child on custodial parent seeking to relocate); *Staab v. Hurst*, 44 Ark. App. 128, 134, 868 S.W.2d 517 (1994) (placing burden on custodial parent to show "some real advantage" to relocation); *Ramos v. Ramos*, 697 So. 2d 280, 283 (La. App. 1997) (placing burden on custodial parent to prove that "the move is in the child's best interest"); *Burnham v. Basta*, 241 App. Div. 2d 628, 629, 659 N.Y.S.2d 945

In the present case, the trial court placed "the burden of establishing the benefits of the move" on the relocating parent. Such a decision is inconsistent with the burden allocation scheme articulated above, the second part of which requires the nonrelocating parent to prove that the relocation would not be in the best interests of the child. On remand, therefore, the trial court must apply the shifting burden of proof scheme set forth in this opinion.

## II

While resolution of the second certified issue regarding the allocation of the burden of proof is dispositive, in order to provide guidance in this evolving area of law, we will also address the first certified issue: "Did the trial court consider the correct criteria for determining the best interests of the child when the parent who was awarded primary physical custody of the child wishes to relocate?" *Ireland* v. *Ireland,* supra, 243 Conn. 905.

The legislature has not defined "best interests of the child." Historically, this court has likewise eschewed defining the phrase in different contexts as opportunities to do so have arisen. In the case before us, however, exercising its supervisory authority, the Appellate Court endorsed the criteria set forth in *D'Onofrio* v. *D'Onofrio,* supra, 144 N.J. Super. 200, for use in determining the best interests of a child in future relocation cases. See *Ireland* v. *Ireland,* supra, 45 Conn. App. 427. These factors, as set forth by the Appellate Court, are: "(1) advantages of the move in terms of its likely capacity to improve the general quality of life for the custodial

(1997) (concluding that custodial parent seeking relocation had "not met her burden of demonstrating . . . that the relocation" would serve child's best interests); *Stout* v. *Stout,* 560 N.W.2d 903, 913 (N.D. 1997) (fashioning test placing "the burden of proof . . . on the custodial parent to show that the removal of the child . . . is consistent with the best interests of the child").

parent and child; (2) motivation or good faith of the custodial parent in desiring relocation, specifically, if interference in noncustodial parent's visitation or relationship is a factor in the move; (3) likelihood of custodial parent to comply with visitation orders necessitated by relocation; (4) good faith or motivation of noncustodial parent in resisting relocation; and (5) whether, if relocation is allowed, there is a realistic opportunity for a visitation schedule that will provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent." Id., 427–28, citing *D'Onofrio* v. *D'Onofrio*, supra, 206.

The plaintiff asserts that, because the best interests of the child are so intricately interwoven with the interests of the custodial parent, any determination of the child's best interests necessarily encompasses an inquiry into the interests of the custodial parent. The defendant argues that the analytical approach advanced by the plaintiff of shifting the focus of the inquiry from the best interests of the child to those of "some other person or entity," here, the new family unit, contravenes this court's long-standing commitment to the best interests of the child standard. The plaintiff responds that the best interests of the child remain the appropriate focus in relocation cases and that she has not suggested that the interests of the new family unit are "either paramount or the sole factor to be considered in a custodial relocation case."

We agree with the plaintiff's characterization of her argument and take this opportunity to reaffirm that the best interests of the child must always govern decisions involving custodial or visitation matters. An approach that takes into consideration the interests of the new family unit as a whole is consistent with the best interests of the child standard. In fact, we believe that an attempt to determine what is best for the child without consideration of what is best for the family unit, with

whom the child spends the most significant amount of his or her time, would be an incomplete inquiry. As we discussed in part I B of this opinion, requiring the custodial parent to forego potential benefits of a relocation, such as educational, employment or marriage opportunities, would deny the child the correlative benefits of such opportunities, for example, increased financial or emotional stability of the family unit. See, e.g., *In re Marriage of Burgham*, 86 Ill. App. 3d 341, 345, 408 N.E.2d 37 (1980) ("granting . . . a request [to relocate] would likely indirectly benefit the child by making the custodian a happier, better adjusted parent than would be the case if the custodian's freedom of movement was more restrained"); *Cooper* v. *Cooper*, supra, 99 N.J. 54 ("[b]ecause the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires that the interests of the custodial parent be taken into account"); *Long* v. *Long*, 127 Wis. 2d 521, 530, 381 N.W.2d 350 (1986) (stating that trial court should not have "ignored the impact of the custodial [parent]'s well-being on the children"). We conclude, therefore, that in relocation cases, it is not only proper to consider the interests of the family unit as a whole, including the independent interests of the custodial parent, but it is necessary to a determination of the child's best interests. We emphasize that this approach is consistent with and furthers our commitment to the best interests of the child, which continue to be the primary concern in matters affecting custody or visitation.

While the Appellate Court endorsed the *D'Onofrio* criteria for use in future relocation cases, the plaintiff urges this court to adopt instead the factors advanced by the New York Court of Appeals in *Tropea* v. *Tropea*, 87 N.Y.2d 727, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996). These factors are: "[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships

between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements." Id., 740–41. The court also considered relevant "the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships." Id., 740.

The defendant argues, on the other hand, that the Appellate Court considered the correct criteria in determining the best interests of the child. He asserts that the *D'Onofrio* criteria are "clearly relevant to the competing interests of the parties and the child."

The *D'Onofrio* criteria, which have been widely cited in the past two decades, have proven useful to many courts in their analyses of the best interests of children in relocation cases.[7] We therefore approve of the Appellate Court's endorsement of the criteria. They were

[7] The *D'Onofrio* criteria have been either specifically cited with approval or essentially adopted by many state courts. See *Pollock* v. *Pollock*, 181 Ariz. App. 275, 278, 889 P.2d 633 (1995); *Staab* v. *Hurst*, 44 Ark. App. 128, 134, 868 S.W.2d 517 (1994); *In re Marriage of Chester*, 907 P.2d 726, 730 (Colo. App. 1995); *Mize* v. *Mize*, supra, 621 So. 2d 417; *In re Marriage of Eckert*, 119 Ill. 2d 316, 325, 518 N.E.2d 1041 (1988); *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 479 (Iowa 1993); *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 710, 481 N.E.2d 1153 (1985); *Anderson* v. *Anderson*, 170 Mich. App. 305, 309, 427 N.W.2d 627 (1988); *Auge* v. *Auge*, supra, 334 N.W.2d 398–99; *Effinger* v. *Effinger*, 913 S.W.2d 909, 912 (Mo. App. 1996); *Trent* v. *Trent*, 111 Nev. 309, 316, 890 P.2d 1309 (1995); *Stout* v. *Stout*, 560 N.W.2d 903, 908–909 (N.D. 1997); *Gruber* v. *Gruber*, 400 Pa. Super. 174, 184–86, 583 A.2d 434 (1990); *Fortin* v. *Fortin*, 500 N.W.2d 229, 232 (S.D. 1993); *Taylor* v. *Taylor*, 849 S.W.2d 319, 331 (Tenn. 1993); *Love* v. *Love*, 851 P.2d 1283, 1289 (Wyo. 1993).

indeed relevant to the issue before that court and their use was proper. Exercising our own supervisory authority, however, after consideration of both the *D'Onofrio* criteria and the *Tropea* factors, we choose to adopt, for use in future relocation cases, the *Tropea* factors set forth by the New York Court of Appeals.

Examination of both sets of criteria reveal that each of the factors set forth in *D'Onofrio* is essentially included in the *Tropea* list. While one *D'Onofrio* criterion—the likelihood of the custodial parent to comply with visitation orders necessitated by relocation—is not expressly stated in the *Tropea* factors, it is implicit in two of the factors: "[T]he impact of the move on the quantity and quality of the child's future contact with the noncustodial parent . . . and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements." *Tropea* v. *Tropea*, supra, 87 N.Y.2d 740–41. Moreover, the additional factors listed by the *Tropea* court but not considered by the *D'Onofrio* court, such as the quality of the relationship between the child and each parent, the relationship between the parents themselves and its potential negative impact, if any, on the child, and the relationships between the child and members of his or her extended family; id.; all carry the potential to shed further light on what the best interests of the child may be in relocation cases. The focus of these

It should be noted that the Supreme Court of New Jersey changed its approach in the years following *D'Onofrio*. In 1984, in *Cooper* v. *Cooper*, supra, 99 N.J. 56, the court moved to a test requiring the custodial parent to show a "real advantage" to relocation, at which point the noncustodial parent bore the burden of showing that the proposed visitation schedule would be so burdensome as to unreasonably affect his or her relationship with the child. Just four years later, the court again modified its test. In *Holder* v. *Polanski*, 111 N.J. 344, 544 A.2d 852 (1988), concerned that the custodial parent "enjoy the same freedom of movement as the noncustodial parent"; id., 352; the court held that "any sincere, good faith reason [for the move] will suffice . . . [even without] a real advantage . . . ." (Internal quotation marks omitted.) Id., 352–53.

factors on the impact of the potential move on the child makes them useful tools in a court's best interests analysis.[8]

In endorsing the use of the *Tropea* factors in future relocation cases, we also follow the example of the New York Court of Appeals in providing a cautionary word to our trial courts. As that court stated: "[N]o single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome. There are undoubtedly circumstances in which the loss of midweek or every weekend visits necessitated by a distant move may be devastating to the relationship between the noncustodial parent and the child. However, there are undoubtedly also many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, or perhaps even more conducive, to the maintenance of a close parent-child relationship, since such extended visits give the parties the opportunity to interact in a normalized domestic setting." Id., 738.

We emphasize that the list of factors we endorse today should not be considered exclusive, nor should any single factor be presumed to carry dispositive weight. Moreover, any other facts or circumstances that could have a bearing on the court's determination of the child's best interests should be considered and given

---

[8] We note that while the New York Court of Appeals did not determine, in *Tropea*, which party should bear the burden of proof as to the child's best interests, lower courts of that state have since placed the burden on the custodial parent seeking relocation to demonstrate that the proposed relocation would be in the child's best interests. See, e.g., *Burnham* v. *Basta*, 241 App. Div. 2d 628, 659 N.Y.S.2d 945, 947 (1997) (placing burden on custodial parent). Although we have chosen to place this burden on the noncustodial parent opposing the relocation; see part I B 2 of this opinion; we note that the issue regarding the allocation of the burden of proof is distinct from that of establishing criteria to be employed in determining what the child's best interests are. Therefore, we are free to adopt the *Tropea* factors while establishing our own burden allocation scheme.

the appropriate weight in a court's analysis. We believe that the factors set forth in this opinion, considered with an eye toward ensuring the child a life as comfortable, stable and happy as possible, will prove valuable to courts in determining the best interests of the child.

We return now to the present case. Although the trial court essentially considered several of the factors we adopt today, on remand, it should consider all of the factors to determine their bearing, if any, on the case. We remind the trial court that the list of factors is not exhaustive and that the court should consider any other facts or circumstances relevant to a determination of the child's best interests.

## III

The final certified issue in this appeal is: "Was the trial court correct in prohibiting the custodial parent from calling the attorney for the minor child as a witness to examine him with respect to his written report filed with the court recommending that the child's best interest would be served if the child remains in Connecticut?" *Ireland* v. *Ireland*, supra, 243 Conn. 905. Although we need not address this issue to dispose of this appeal, we discuss it as it is likely to arise again on remand.

The following facts as set forth in the Appellate Court opinion are pertinent to a discussion of this issue: "Prior to trial, on November 6, 1995, [the attorney for the child] submitted a report to the trial court recommending that the child's best interest would be served by preserving the status quo and remaining in Connecticut. The plaintiff attempted to call [the attorney] as a witness to question him about the report. The trial court ruled that the attorney could not be questioned." *Ireland* v. *Ireland*, supra, 45 Conn. App. 430. On appeal, the Appellate Court affirmed the trial court's ruling. Id.

The plaintiff argues that, because the attorney's report contained "personal biases, presumptions and

facts not in evidence," and because the trial court relied, in part, on the report in its decision, she should have been permitted to call the attorney as a witness. Specifically, she argues that submission of the pretrial report rendered the attorney a necessary witness in the case.

The defendant argues that the trial court correctly excluded the attorney as a witness. He relies on General Statutes § 46b-54 (c), which provides in part that "[c]ounsel for the child or children *shall be heard* on all matters pertaining to the interests of any child . . . so long as the court deems such representation to be in the best interests of the child." (Emphasis added.) Specifically, the defendant argues that the statute does not limit the methods of communication available to the attorney for the child and, therefore, it was permissible for the attorney to submit the report.

A trial court, in exercising its broad discretion in determining what is in a child's best interests, "may appoint counsel for any minor child . . . if the court deems it to be in the best interests of the child . . . ." General Statutes § 46b-54 (a). "The purpose of appointing counsel for a minor child . . . is to ensure independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation." *Schult* v. *Schult*, supra, 241 Conn. 778.

Although issues involving attorneys for minor children have previously come before this court, we have never taken the opportunity to delineate the precise role those attorneys should play in legal proceedings regarding custody and visitation. See, e.g., id., 779 (stating court has not delineated exact roles of attorney for child and guardian ad litem and recognizing roles could conflict); *Knock* v. *Knock*, supra, 224 Conn. 791 (noting neither legislature nor court has determined obligations

and limitations of role of attorney for minor child).
Resolution of the question before us does not require,
however, a complete delineation of the role of the attorney
for the minor child. We take this opportunity, none-
theless, to provide some measure of guidance to courts
and to attorneys acting on behalf of minor children in
cases such as this.

In his argument that the attorney's actions in submit-
ting his report and not being subjected to questioning
were proper, the defendant, in his brief, relies on Prac-
tice Book § 285A, now Practice Book (1998 Rev.) § 5-
1, which provides in part that "[t]he parties may, as of
right, or shall, if the court so orders, file, at such time as
the court shall determine, written *trial briefs* discussing
the issues in the case and the factual or legal basis
upon which they ought to be resolved. . . ." (Emphasis
added.) The defendant asserts that the attorney's report
contains "exactly the type of material provided for in
§ 285A: a discussion of the factual and legal basis upon
which the relocation issue should be resolved." Section
285A, however, governs the filing of trial briefs. The
unsolicited report in question is not a trial brief. It is,
in fact, a two page report containing the attorney's
personal opinions as to the nature of the relationships
between the parents and the child, and the quality of
parenting experienced by the child. It also contains the
attorney's opinion that the child's best interests would
be served by his remaining in Connecticut. In short, the
report is a statement of personal opinions, devoid of
legal analysis. Therefore, contrary to the defendant's
assertions, the attorney's report does not provide a "fac-
tual and legal basis" for resolution of the relocation
issue.

Moreover, we can think of no good reason, nor has the
defendant provided one, to justify interpreting § 285A so
as to permit the introduction of an attorney's personal

opinions into his or her submissions to the courts. The rules of practice set forth court rules applicable to all types of legal proceedings. It is not limited to the practice of family law. We do not allow submission of attorneys' personal opinions in other areas of the law and we see no reason to do so in this case. Consequently, for all the foregoing reasons, the defendant's reliance on § 285A is misplaced.[9]

This is not to say that an attorney for a child should not be heard regarding the child's best interests. The legislature has deemed such input to be relevant. See General Statutes § 46b-54 (c). Rather, as indicated by this court, an attorney for the child should provide "independent representation of the child's interests . . . *within the usual constraints applicable to such representation.*" (Emphasis added.) *Schult* v. *Schult,* supra, 241 Conn. 778. We conclude that such representation is limited to the type of representation enjoyed by unimpaired adults. In other words, the attorney for the child is just that, an *attorney,* arguing on behalf of his or her client, based on the evidence in the case and the applicable law. The attorney is not, however, a witness, whether quasi-expert or otherwise. Thus, an attorney

---

[9] As additional support for his position, the defendant cites *Wolf* v. *Wolf,* 39 Conn. App. 162, 163, 664 A.2d 315 (1995), stating that the Appellate Court in that case expressly indicated that a trial court order that counsel for the children prepare a report similar to that submitted by the attorney in the present case was within the scope of General Statutes § 46b-54 (c). For several reasons, however, *Wolf* does not support the defendant's position. For example, the report in *Wolf* was expressly solicited by the court and was to be submitted after conclusion of the trial and only "in the event of a disagreement between the parties concerning whether their daughter would attend boarding school . . . ." Id. In such circumstances, the attorney was to ascertain the child's wishes on that very limited question and prepare a postjudgment report for the trial court. Id. Therefore, the report in *Wolf,* submitted at the court's request and limited in its subject matter, was very different than the report at issue in the present case, which was unsolicited and which contained an opinion as to the ultimate conclusion in the case.

for a minor child shall be heard in a similar manner as most other attorneys are heard, that is, through such methods as written briefs, questioning of witnesses, oral arguments, and other proceedings that take place during the course of a trial.

The unsolicited report in question, submitted to the court months in advance of trial, contained a conclusion as to the proper outcome of the case, supported only by the attorney's opinion as to what would be in the best interests of the child. As a foundation for his ultimate conclusion that the child's best interests would be served by his remaining in Connecticut, the attorney began with the premise that "the child's best interest is served by spending the maximum time possible with each of his biological parents." The attorney provided no legal or analytical basis for this premise but, rather, based it on his own observations. Such a position is more properly advanced by a guardian ad litem; and, even then, such an opinion should ordinarily be submitted through testimony subject to cross-examination, rather than through an unsolicited written report.[10] In the present case, the attorney was not appointed as such and his report should have been neither submitted to, nor considered by, the court during its deliberations.

As we have stated: " 'Typically, the child's attorney is an advocate for the child, while the guardian ad litem is the representative of the child's best interests.' " Id., 779, quoting *Newman* v. *Newman*, supra, 235 Conn. 96. Further, we have expressed a concern about conflating the two roles. See *Schult* v. *Schult*, supra, 241 Conn. 779 ("we expressed concern about creating conflict in

[10] Chapter 815j of the General Statutes, which governs the resolution of custody disputes, does not require the appointment of a guardian ad litem. See generally General Statutes §§ 46b-40 through 46b-87a. General Statutes § 45a-132 (a), however, provides in part that a judge or magistrate "[i]n any proceeding before a court of probate or the Superior Court . . . may appoint a guardian ad litem . . . ."

the attorney's role by conflating the role of counsel for a child with the role of a guardian ad litem" [internal quotation marks omitted]). In *Schult*, the guardian ad litem testified regarding issues relating to custody. See id., 781. The attorney in that case did not testify but, rather, participated in the trial "by calling witnesses and conducting direct and cross-examination." Id., 773. The attorney provided her opinion as to the proper custody decision during her final argument. Id. The *Schult* court concluded that such an opinion was permissible under those circumstances. Id., 783–84.

Returning to the appeal before us, we conclude, without attempting to define the precise parameters of the functions of the guardian ad litem, that such a distinction between the two roles is proper. An attorney for the child should not express to the court, in advance of trial, his or her opinion as to the best interests of the child, particularly when that opinion is at the heart of the ultimate issue in the case. An attorney for the child should participate in legal proceedings by submitting trial briefs, questioning witnesses, giving oral argument, and, generally, by functioning in a manner similar to an attorney for an unimpaired adult. The proper forum and method for communication of his or her opinion is during final argument. Outside of that forum, his or her opinion has no place in the proceedings.

## IV

In conclusion, on remand, the custodial parent seeking to relocate must prove, by a preponderance of the evidence, that the proposed relocation is motivated by a legitimate purpose and that the new location bears a reasonable relation to that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child. To determine the

child's best interests, the court should consider the factors set forth in part II of this opinion, giving each relevant factor the appropriate weight under the circumstances of this case, and being mindful that the list is not exclusive. Finally, when making its determination as to the best interests of the child, the trial court is not to consider the report submitted by the attorney for the child.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new hearing.

In this opinion CALLAHAN, C. J., and BORDEN, BERDON and PALMER, Js., concurred.

BORDEN, J., concurring. I fully concur with and join the majority opinion. I write separately only to respond briefly to the statement in the concurring opinion of Justice Palmer that "the burden allocation scheme the majority adopts today will be dispositive only in those relatively rare cases in which the evidence adduced regarding the best interests of the child with respect to relocation is in equipoise." First, once the custodial parent has met his or her initial burden of establishing the legitimacy of the relocation, it is very unlikely that the evidence will be in equipoise.

Furthermore, although the statement of Justice Palmer is true—that is, allocating a burden of proof by the preponderance of the evidence is *dispositive* only when the fact finder determines that the evidence is in equipoise, and therefore the party with the burden loses—the emphasis on that truism unduly minimizes the other, significant aspects of the allocation of a burden of proof. In addition to determining when the allocation will be *dispositive*, it also informs the parties of what precisely they have to prove. Furthermore, it provides a structure for the trial court regarding how to think about the case as it hears the evidence.

Most fundamentally, however, by the law establishing a burden of proof on a particular issue, it establishes what the law considers to be the presumed outcome of a particular type of case, and states the law's position on what is necessary to change that outcome. This process implicitly expresses the societal values involved in the particular type of litigation in question. The decision in this case appropriately expresses our state's determination of the difficult and delicate balance between the necessary mobility of life in today's world and the inevitable, painful dislocations that such mobility imposes on families riven by marital dissolution.

BERDON, J., concurring. I fully concur and join in the majority opinion. But I must confess that many of the concerns expressed by Justice Norcott in his dissenting opinion are also troubling for me. One of those concerns I share with him is that our decision today may cause additional litigation with respect to the initial custody determination because of the presumption in favor of the custodial parent once he or she demonstrates to the court "that the relocation is for a legitimate purpose and . . . that the proposed location is reasonable in light of that purpose." A parent realizing that his or her visitation may be effectively eliminated or severely restricted because of a possible future relocation of the other parent may think twice before voluntarily agreeing that the other parent should have custody.

More importantly, it is clear that reasonable visitation for the noncustodial parent is generally in the best interests of the child and putting distance between the child and that parent obviously will impact on those best interests. I realize that some scholars have advocated that the best interests of the child require that visitation be at the sole discretion of the custodial parent; J.

Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (New Ed. 1979) p. 38;[1] I have never subscribed to that view. Visitation with the noncustodial parent is important for the development of the child and to leave visitation to the sole discretion of the custodial parent is not in the best interests of the child. R. Berdon, "Child Custody, Litigation: Some Relevant Considerations," 53 Conn. B.J. 279, 288–293 (1979).

Nevertheless, there are no real perfect solutions when the biological parents of the child decide to go their separate ways—especially when it is not done in an amicable manner. I join in the majority opinion because once the biological parent demonstrates that he or she has an ongoing relationship with the child, that it is important for the best interests of the child that that relationship be maintained, and that the place to which the custodial parent's plans to relocate will severely impede on that relationship, that presumption will be overcome. I believe that with the adoption of the factors set forth in *Tropea* v. *Tropea*, 87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996), for the purposes of guiding our trial courts in determining whether the noncustodial parent has sustained his or her burden of overcoming the presumption, the best interests of the child should be fully protected.

PALMER, J., concurring. I join the majority opinion for the reasons set forth therein. I write separately,

---

[1] "Once it is determined who will be the custodial parent, it is that parent, not the court, who must decide under what conditions he or she wishes to raise the child. Thus, the noncustodial parent should have no legally enforceable right to visit the child, and the custodial parent should have the right to decide whether it is desirable for the child to have such visits. What we have said is designed to protect the security of an ongoing relationship—that between the child and the custodial parent. At the same time the state neither makes nor breaks the psychological relationship between the child and the noncustodial parent, which the adults involved may have jeopardized. It leaves to them what only they can ultimately resolve." J. Goldstein, A. Freud & A. Solnit, supra, p. 38.

however, to emphasize that the burden allocation scheme the majority adopts today will be dispositive only in those relatively rare cases in which the evidence adduced regarding the best interests of the child with respect to relocation is in equipoise. See, e.g., *State* v. *Webb*, 238 Conn. 389, 508, 680 A.2d 147 (1996) ("[T]he only fact-finding efforts that actually turn on the *allocation* of [the] burden [of proof] are those in which the fact finder, after weighing the evidence, finds its mind in perfect equipoise. . . . In such a rare case, the allocation of the burden of persuasion to the party asserting the truth of the proposition at issue means that that party cannot prevail." [Citation omitted; emphasis in original.]).

I agree with the majority that, in circumstances in which one parent has been awarded *sole* physical custody of a child, and that parent wishes to relocate, as long as he or she establishes that the move is for a legitimate purpose and is reasonable in light of that purpose, the noncustodial parent properly bears the burden of showing why the move would not be in the child's best interests. This approach gives appropriate voice to the custodial parent's bona fide interest in relocating. I discern nothing in the majority opinion, moreover, that may be interpreted as signaling a departure from what remains the proper, and sole, focus of the court's analysis, namely, the best interests of the child. Therefore, it is true, as the majority states, that there will be situations in which a child's interests will be best served by permitting the custodial parent to relocate with the child. It is equally true, however, that there also will be circumstances in which, although the custodial parent establishes that a relocation would be in his or her *own* best interests, the noncustodial parent will be able to demonstrate that, for any number of legitimate reasons, the *child's* best interests militate in favor of preserving the nature and frequency of the

child's contact with the noncustodial parent.[1] In such cases, the court will be obliged to maintain the status quo. Because the burden allocation scheme adopted by the majority is fully consistent with the statutory mandate that the sole consideration in custody matters be the child's best interests, and because that approach will make a difference only in those exceptional circumstances in which the relative benefits, to a child, of remaining or relocating are perfectly in balance, I join the majority opinion.[2]

NORCOTT, J., dissenting. I agree with part II of the majority opinion that the factors set forth in *Tropea* v. *Tropea*, 87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642

[1] Of course, there may be other persuasive reasons why relocation would not be in the child's best interests.

[2] Two statements in the concurring opinion of *Borden*, J., warrant a brief response. First, Justice Borden asserts that "once the custodial parent has met his or her initial burden of establishing the legitimacy of the relocation, it is very unlikely that the evidence will be in equipoise." It is not clear to me upon what this conclusion is based. More importantly, however, at that stage of the proceedings, the noncustodial parent will not yet have had the opportunity to establish that relocation is not in the child's best interests. Thus, whether the evidence is or is not in equipoise when the burden shifts to the noncustodial parent is simply beside the point. As I have indicated, the burden allocation scheme the majority adopts today will be dispositive only in those few cases in which the custodial parent has met his or her initial burden *and* the noncustodial parent has demonstrated only that, in light of all relevant factors, the status quo is no better for the child than relocation.

Second, Justice Borden's statement that the burden allocation scheme adopted by the majority "establishes what the law considers to be the presumed outcome" of this type of case is potentially misleading. Of course, it is true that, under the majority's approach, once the custodial parent has established legitimate reasons to move, the noncustodial parent will be required to show, by a preponderance of the evidence, that relocation is not in the child's best interests. This burden allocation scheme presumes no outcome; rather, it places a very light "thumb on the scale" in favor of the custodial parent who can establish bona fide reasons to relocate. Thus, although the burden the majority places on the noncustodial parent will be decisive in the rare case in which the relative merits of relocation, on the one hand, and the status quo, on the other, are in equipoise, the only truly outcome determinative consideration is the child's best interests.

N.Y.S.2d 575 (1996), should be utilized in future reloca-
tion cases. I disagree, however, with part I of the opinion
in which the majority adopts a presumption whereby
the decision to relocate by the custodial parent is pre-
sumed to be in the child's best interests. Because I
conclude that a presumption should not be utilized in
adjudicating relocation cases and that the trial court
properly determined that the burden of establishing the
benefits of the move should rest with the relocating
parent, I dissent.

The issue of whether the trial court was correct in
placing the burden of establishing the benefits of the
move on the custodial parent is one of first impression
for this court.[1] The resolution of relocation cases
involves "imperfect and often painful solutions."
*Gruber* v. *Gruber*, 400 Pa. Super. 174, 189, 583 A.2d 434
(1990). If the children have lived their entire lives in
one community, they will have strong ties to family,
friends and home. The move will require them to leave
their school, athletic associations, friends, church, doc-
tors, and, most important, the other parent. "Relocation
cases . . . present some of the knottiest and most
disturbing problems . . . courts are called upon to
resolve. In these cases, the interests of a custodial par-
ent who wishes to move away are pitted against those
of a noncustodial parent who has a powerful desire to
maintain frequent and regular contact with the child."
*Tropea* v. *Tropea*, supra, 87 N.Y.2d 736. Our dilemma is
to balance these competing interests, while recognizing
that the interests of the child remain paramount.

As a preliminary matter, it is an unfortunate reality
"that divorce causes irrevocable changes in parent-child
relationships." *Gruber* v. *Gruber*, supra, 400 Pa. Super.

---

[1] Although *Blake* v. *Blake*, 207 Conn. 217, 541 A.2d 1201 (1988), was a
relocation case, we did not establish the analytical framework to be used
in such cases.

183. As does the majority, I recognize in postdissolution situations the congruence of interests between the custodial parent and the minor child. "[T]he child's interests [are] so interwoven with the well-being of the new family unit that 'the determination of the child's best interests requires that the interests of the custodial parent be taken into account.' *Cooper* v. *Cooper*, 99 N.J. 42, [54, 491 A.2d 606] (1984)." *In re Marriage of Francis*, 919 P.2d 776, 784 (Colo. 1996); *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 710, 481 N.E.2d 1153 (1985). "[T]he best interests of the child are more closely allied with the interests and quality of life of the custodial parent and cannot, therefore, be determined without reference to those interests." *Gruber* v. *Gruber*, supra, 183; *Cooper* v. *Cooper*, supra, 53–54 ("interests of the child are closely interwoven with those of the custodial parent").

The majority reasons that the noncustodial parent should be required to bear the burden of demonstrating that the move is *not* in the best interests of the child because of its assumption that the decision by the custodial parent to relocate, having demonstrated that the decision is not motivated by an improper motive and is for a legitimate purpose, is presumed to be in the best interests of the child.[2] Although concededly interrelated, it does not seem that a parent's well-being and a child's well-being necessarily go hand in hand. "That the move is in the best interests of the custodial parent does not mean that it is automatically in the best interests of the child." *Yannas* v. *Frondistou-Yannas*, supra, 395 Mass. 711. Consideration of the interests of the custodial parent does not mean that they should take precedence nor that they necessarily represent the best interests of the child. The adoption of a presumption

[2] The burden shifting scheme adopted by the majority "mirrors that followed by the Colorado Supreme Court in 1996, in *In re Marriage of Francis*, supra, 919 P.2d 776." See footnote 6 of the majority opinion.

subsumes a factual determination of what is best for the child. "An evaluation of the best interests of the child requires attention to whether the quality of the child's life may be improved by the change (including any improvement flowing from an improvement in the quality of the custodial parent's life), the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent, and the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child." Id. The difficulty with the majority's reasoning is that it seeks to encompass decisions to relocate under the award of physical custody. The majority reasons that presuming that the move is in the best interests of the child "is consistent with the trust shown by the court in awarding primary physical custody . . . ."[3] I disagree that such a decision is presumptively in the best interests of the child simply by virtue of the fact that it was made by the custodial parent.

It is undisputed that the parent who has physical custody will be called upon to make countless daily decisions that affect the life and well-being of the child. I further acknowledge that in situations where custody is contested, the trial court, in awarding physical custody, has recognized that living with the custodial parent is in the best interests of the child. In the present case, the majority seeks to extend this presumption to the decision to relocate to a home that is on the other side of the country, upon demonstrating that the relocation is in good faith, for a legitimate purpose and to a location that is reasonable in light of that purpose. The fact that a custodial parent was awarded physical custody because it was determined to be in the best interests of the child should not be considered in a vacuum.

---

[3] Primary physical custody in the present case was the result of an agreement between the parties, not the result of a judicial determination of the best interests of the child.

A myriad of factors go into such a determination, including the relationship and scheduled visitation by the noncustodial parent. I decline to sweep into the award of physical custody a presumption that a custodial parent's decision to relocate is in the child's best interests. Such a decision, at least in the present case, was not contemplated at the time of dissolution and custody.

Moreover, in adopting a presumption whereby the custodial parent's decision to relocate is presumed to be in the child's best interests, the majority has departed from long-standing precedent. This court has consistently eschewed the use of presumptions in custodial determinations. See, e.g., *Presutti* v. *Presutti*, 181 Conn. 622, 627–28, 436 A.2d 299 (1980) (declining to impose presumption either for or against nonresident parent); *Simons* v. *Simons*, 172 Conn. 341, 350, 374 A.2d 1040 (1977) (declining to impose presumption favoring mother or presumption against modification). The reason we have done so is because such determinations are highly individualized and require a case-by-case determination, one that has as its goal the best interests of the child. As a rule, a presumption, at a minimum, shifts the burden of producing evidence. 2 C. McCormick, Evidence (4th Ed. 1992) § 342, p. 450. The burden of going forward is on the party against whom the presumption operates to produce evidence to negate the presumption. See *Doe* v. *Doe*, 244 Conn. 403, 455, 710 A.2d 1297 (1998). Under the presumption adopted by the majority, a custodial parent would have to demonstrate only that the relocation was for a legitimate purpose and that the proposed location was reasonable in light of that purpose, not that specific benefits would cause it to be in the best interests of the child. By adopting a presumption in what should be a balancing test to ascertain the best interests of the child, the majority places its thumb on the scale firmly on the side of the custodial parent.

As support for its argument, the majority points to the noncustodial parent's ability to relocate without consulting the custodial parent. It is true that "a noncustodial parent is perfectly free to remove himself from [a] jurisdiction despite the continued residency here of his [or her] children in order to seek opportunities for a better or different life style for himself." *D'Onofrio* v. *D'Onofrio*, 144 N.J. Super. 200, 207, 365 A.2d 27, aff'd, 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976). The majority argues that because the noncustodial parent possesses the ability to singularly abrogate his or her relationship with the children by moving away, the custodial parent also should be able to do so. If a noncustodial parent wishes to sacrifice his or her relationship with his or her children, he or she may certainly do so and is limited only by his or her conscience. It is by no means a logical extension to argue that the custodial parent should possess the same ability to unilaterally abrogate the noncustodial parent's relationship with the children.

Because the presumption favors the custodial parent's decision to move, it might be thought that this analytical framework will reduce litigation in these cases. The parties, however, upon realizing the significance of having physical custody, then will have the incentive to litigate this at an earlier stage of the proceedings to prevent the other parent from being able to move away with the children. Because of its emphasis on labels, the majority opinion, by adopting a presumption in favor of a custodial parent, as in *In re Marriage of Burgess*, 13 Cal. 4th 25, 913 P.2d 473, 51 Cal. Rptr. 2d 444 (1996), and its progeny, "[promises to] foster custodial battles at the beginning stages of a case because of the awesome consequences of long-distance relocation of children." R. Bryan, "Beyond Burgess," 20 Fam. Advoc. 14, 16–17 (1997).

Research has revealed that our sister states similarly have struggled with establishing an equitable framework in which to resolve relocation cases, with the concomitant result of a dizzying array of approaches to the situation. See *Gruber* v. *Gruber*, supra, 400 Pa. Super. 181 ("[O]ur research has failed to reveal a consistent, universally accepted approach to the question of when a custodial parent may relocate out-of-state over the objection of the non-custodial parent. In fact, the opposite is true. Across the country, applicable standards remain distressingly disparate."); C. Bruch & J. Bowermaster, "The Relocation of Children and Custodial Parents: Public Policy, Past and Present," 30 Fam. L.Q. 245, 270–302 (1996) (state-by-state survey). Yet, in viewing the variety of approaches, the use of presumptions has not commanded a majority position.

The issue to be resolved in such cases distills to whether the benefit to the child in relocating outweighs the loss or diminution of contact with the noncustodial parent. The analysis must begin, therefore, by ascertaining the benefits of the proposed move, a highly factual and individualized determination ill-suited to the use of a presumption. Cases in which a custodial parent's desire to relocate conflicts with the desire of a noncustodial parent to maximize visitation opportunity are simply too complex to be satisfactorily handled with a mechanical approach that interferes with a simultaneous weighing and comparative analysis of all of the relevant facts and circumstances. The imposition of a presumption in such a situation necessarily detracts from focusing on whether the relocation is in the best interests of the child, which must remain our touchstone. A custodial parent, in making the decision to relocate, is likely to underestimate the value of a continued relationship between the child and the noncustodial parent. "Sensitive case-by-case balancing is required to ensure that all interests are treated as equitably as

possible." *Gruber* v. *Gruber*, supra, 400 Pa. Super. 186. "Each case involving the relocation of children must be resolved on the particular facts of the case rather than by rigid application of rules, and the best interests of the child always remain the paramount concern." *Effinger* v. *Effinger*, 913 S.W.2d 909, 912 (Mo. App. 1996).

Rather than construe the authority to relocate children out-of-state as inherent in the award of physical custody, as does the majority, I view the decision to relocate analytically indistinct from a modification of the visitation established by the parties at the time of dissolution. A move out-of-state will render it impossible for the noncustodial parent to continue the current visitation schedule and, therefore, the existing order will require modification. As the party seeking to disrupt the status quo and thereby effecting a change in visitation, the custodial parent is the logical party to identify the benefits of the move that necessitate what may be a dramatic reduction in visitation with the noncustodial parent. The custodial parent is in the best position to identify the reasons why the locale was selected, the advantages of the relocation, and how the change would parlay into an improvement of the child's situation such that the move would be in the best interests of the child. This framework is consistent with our approach when a party seeks to modify visitation. See General Statutes § 46b-56 (b) (1) ("[i]n making or modifying any order with respect to custody or visitation, the court shall . . . be guided by the best interests of the child"); *Cookson* v. *Cookson*, 201 Conn. 229, 241, 514 A.2d 323 (1986) (party seeking to modify visitation bears burden of persuasion that modification is in child's best interests). Moreover, requiring the custodial parent to articulate the benefits of the relocation imposes only a slight burden. It stands to reason that demonstrating such

benefits should not be difficult if the move is a significant life-enhancing opportunity, offering "the promise of economic, emotional, financial or educational enhancement . . . ." This framework permits "the custodial parent, upon whom the principal burden and responsibility of child rearing falls, the liberty and autonomy to make decisions for the future of his or her family." *Gruber* v. *Gruber*, supra, 400 Pa. Super. 189. The burden on the custodial parent is merely to articulate to the court the opportunities that he or she believes will be reaped by the move, criteria that clearly went into the decision-making process. Accordingly, a presumption is unnecessary because it is evident that the lack of one will not result in a custodial parent being "tethered indefinitely."

Other jurisdictions similarly have required the custodial parent to establish that the relocation is in the best interests of the child. See, e.g., *Pollock* v. *Pollock*, 181 Ariz. App. 275, 277, 889 P.2d 633 (1995) (custodial parent seeking to move has burden of proving move is in child's best interests); *Staab* v. *Hurst*, 44 Ark. App. 128, 134, 868 S.W.2d 517 (1994) (custodial parent should have burden of first demonstrating some real advantage will result from move); *In re Marriage of Clark*, 246 Ill. App. 3d 479, 481, 616 N.E.2d 2 (1993) ("In removal cases, the paramount question is whether the move is in the best interest of the child. The burden of proof is on the custodial parent."); *Ramos* v. *Ramos*, 697 So. 2d 280, 283 (La. App. 1997) (custodial parent must show that there is good reason for move and that move is in child's best interests); *Yannas* v. *Frondistou-Yannas*, supra, 395 Mass. 711–12 (if custodial parent demonstrates "real advantage" then interests of other parties are considered collectively); *Effinger* v. *Effinger*, supra, 913 S.W.2d 912 (consideration of various factors in determining if relocation is in best interests of child); *Harder* v. *Harder*, 246 Neb. 945, 946, 524 N.W.2d 325

(1994) (custodial parent must establish that relocation is in best interests of child); *Sawyer* v. *Sawyer*, 242 App. Div. 2d 969, 972, 664 N.Y.S.2d 505 (1997) ("best interests of the child are the predominant concern and, in making that determination, consideration and appropriate weight must be given to all of the factors that are relevant"); *Stout* v. *Stout*, 560 N.W.2d 903, 906 (N.D. 1997) (custodial parent must satisfy court that there is legitimate reason for leaving state and that it is in child's best interests to continue to live with that parent); *Gruber* v. *Gruber*, supra, 400 Pa. Super. 186 ("[w]hen a custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges the move, the custodial parent has the initial burden of showing that the move is likely to *significantly improve* the quality of life for that parent and the children" [emphasis added]); *Garrison* v. *Mulcahy*, 636 A.2d 732, 733 (R.I. 1993) (relocation of child denied because custodial parent did not establish that moving would be in child's best interests).

I propose that once the custodial parent has made a prima facie showing that the move is in the best interests of the child, the burden should shift to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation is not in the best interests of the child. Such a burden shifting scheme retains the focus on the effect of the move on the children, who, yet again, are caught between battling parents. It has been said that there are no winners in these battles. That may be true, but when faced with these difficult issues, the focus of this court should not waiver from the best interests of the child.

MCDONALD, J., dissenting. I would uphold the trial court's decision placing the burden of proof upon the custodial parent. As Justice Norcott points out, many other states require the custodial parent to bear the

burden of establishing that the move is in the best interests of the child.

The majority places the burden on the noncustodial parent—the father in this case—to establish that his child should not be moved across the country at the convenience of the custodial parent. In the future, any parent would be foolish to forego physical custody or not stipulate that the custodial parent keep the child within a number of miles of Connecticut.

In this case, the father, while sharing joint legal custody of the child with the mother, had agreed that she would have primary physical custody. The father attempted to maintain his relationship with his son by so-called "reasonable visitation." Because the mother's new husband may have had better employment opportunities in California, she sought an order that would deem coast-to-coast visits reasonable visitation. After hearing the witnesses, the trial court found that "the evidence against the move [was] overwhelming," and that the move was "not in the minor child's best interests." I would affirm the Appellate Court in upholding the trial court's well reasoned, careful and thoughtful opinion.

The majority refers to the financial, marital and cohabitational opportunities that such travel would afford the custodial parent, as if such opportunities would replace the father's role in his son's life.[1] Because of the heartache and harm to come about, I do not agree. The New York Court of Appeals has stated: "How valuable the mature guiding hand and love of a second parent may be to a child is taught by life itself." *Weiss*

---

[1] In so doing, the majority cites with approval, in a footnote, the tentative draft of the American Law Institute's "Principles of the Law of Family Dissolution." See footnote 5 of the majority opinion. The use of such footnotes to advance a set of values has drawn the attention of scholars. See generally, e.g., A. Austin, "Political Correctness Is a Footnote," 71 Or. L. Rev. 543 (1992).

v. *Weiss*, 52 N.Y.2d 170, 175, 418 N.E.2d 377, 436 N.Y.S.2d 862 (1981). Each parent's relationship is vital to a child's development. I believe this court should, without any burden shifting, require the custodial parent to bear the burden of proving by a fair preponderance of the evidence that the move is in the best interests of the child.

In this case, the noncustodial parent is the father. In a changing world, a mother with a demanding job and a homemaking husband could find herself to be the noncustodial parent. See M. Petersen, "The Short End of Long Hours: A Female Lawyer's Job Puts Child Custody at Risk," N.Y. Times, July 18, 1998, p. D1 (discussing *Young* v. *Hector*, 740 So. 2d 1153 [Fla. App. 1998], superceded by 740 So. 2d 1158 [Fla. App. 1999]).

As to the first and third certified questions, I would affirm the well reasoned opinion of the Appellate Court.

Accordingly, I respectfully dissent.