[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de: DEFENDANT'S MOTION TO ENJOIN POST JUDGMENT (#160)
The parties' marriage was dissolved by judgment entered November 22, 1996 after an uncontested hearing. The parties' CT Page 10288 separation agreement (117) was incorporated in the judgment. It provided, in Article IV, Paragraph 4.1,
 "The parties shall have joint custody of the minor child, which child shall make his primary residence with the mother, subject to rights of reasonable, liberal and flexible visitation of the father."
The agreement then defined the visitation in the succeeding nine paragraphs number (1) through (3)(f).
The plaintiff invoked paragraph 4.10 which required her to give 90 days notice by certified mail to the defendant of her intention to move to New Jersey, (Defendant's Exhibit C). The plaintiff's letter advised that she planned to move to Morristown as of August 15, 1998. The defendant's response was to file the present motion on May 28, 1998 wherein the defendant moved to enjoin the plaintiff from removing the minor child from the New Canaan/Stamford area until further order of the court.
On June 23, 1998, this motion was granted in that:
 "The parties are ordered to maintain the status quo until further court order."
Hearing was ordered to be held on July 29, 1998 at which time the court vacated any injunction as it applied to the plaintiff and scheduled the hearing to resume on August 21, 1998.
The Supreme Court decision Ireland v. Ireland,246 Conn. 413 was officially released August 18, 1998 deciding an appeal of the trial court's denial of the plaintiff's motion seeking permission to relocate with her minor son to California and its granting of the defendant's motion to enjoin and restrain the relocation. The trial court had placed the burden on the plaintiff custodial parent to prove that relocation would be in the best interest of the child.
In Ireland, pursuant to the parties' agreement that was incorporated into the dissolution decree,
 ". . .the court awarded joint custody of their minor son to the parties with primary physical custody to the plaintiff." Id., p. 415
CT Page 10289
The Ireland case holding is:
 "In summary, we hold therefore, that a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child."
In an oral ruling from the bench, this court found that the plaintiff's move was for a legitimate a purpose and that the proposed location is reasonable in light of that purpose.
The defendant then proceeded with additional evidence to attempt to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child.
The Ireland decision again stated the basic law46b-56 (b) that the bests interests of the child must always govern decisions involving custodial or visitation matters.
The trial court in Ireland relied on D'Onofrio v.D'Onofrio, 144 N.J. super. 200, aff'd. 144 N.J. Super. 352
(App.Div. 1976) which the Appellate Court adopted inIreland v. Ireland, 45 Conn. App. 427 in enumerating the factors.
 "(1) advantages of the move in terms of its likely capacity to improve the general quality of life for the custodial parent and child; (2) motivation or good faith of the custodial parent in desiring relocations, specifically, if interference in noncustodial parent's visitation or relationship is a factor in the move; (3) likelihood of custodial parent to comply with visitation orders necessitated by relocation; (4) good faith or motivation of noncustodial parent in resisting relocation; and (5) whether, if relocation is allowed, there is a realistic opportunity for a visitation schedule that will provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent." Id., pp 429-430
CT Page 10290
The Supreme Court then concluded:
 "that in relocation cases, it is not only proper to consider the interests of the family unit as a whole, including the independent interest of the custodial parent, but it is necessary to a determination of the child's best interest. Id., p. 431
The Supreme Court then replaced the D'Onofrio criteria by adopting the factors set forth in Tropea v. Tropea, 87 N.Y.2d 727,665 N.E.2d 145 (1996) now addressed by this court.
1. Each parent's reasons for seeking or opposing the move. The court has found that the plaintiff has proven earning capacity as a salesperson. The court finds that her greater economic opportunities are in this area of business activity rather than in social work. It is correct that the defendant will not have the weekday contacts with his son that he has enjoyed. As pointed out in Ireland at p. 434:
 "less frequent but more extended visits over summers and school vacations would be equally conducive, or perhaps even more conducive, to the maintenance of a close parent-child relationship. "
2. The quality of the relationships between the child and the custodial and noncustodial parents. There is no doubt in the court's mind that both parties are loving, caring parents.
3. The impact of the move on the quantity and quality of the child's future contact with the noncustodial parent has been commented on in #1 above. The defendant cites an episode that occurred on August 25, 1998 in Morristown when the defendant called plaintiff asking to stop by plaintiff's home to see his son's room or at least see his son. The plaintiff refused. The defendant never called in advance although he knew at least 24 hours earlier he would be in Morristown to visit the neighborhood public school available to the son. The plaintiff characterized this call from a phone booth five minutes from the plaintiff's home as lacking respect for her. The defendant's lack of consideration for the plaintiff!s plans or convenience invited her refusal. This court does not infer an inflexible attitude by the plaintiff from this unfortunate and avoidable episode. CT Page 10291
The court must comment on telephone contact between the defendant and his son. Since weekday direct contacts will be greatly decreased, it becomes more important for the father to be able to speak to his son on the telephone. A designated time is necessary so the child may expect the call and can plan other activities around receiving the call. The child will learn respect from his parents by example. By answering the calls, the child will come to understand civility and respect for both by example. By answering the calls, the child will come to understand civility and respect for both parents.
4. The degree to which the custodial parent's and child's life may be balanced economically, emotionally and educationally by the move.
The court has found the move to be economically valid. She has already demonstrated an earning capacity greatly in excess of $40,000 earned as a social worker. She also is mindful of the time limited alimony she is currently receiving. Delay in restoring her business career is not in her best interests nor can it be in the family unit's best interest.
Her sister, brother-in-law and their six year old son live in Morristown, her only family in the area. The parties' son and his cousin are close in age and interests. Through his cousin, the boy has met several new playmates. The plaintiff has no family in Connecticut. The defendant's parents spend six months a year in Connecticut and while here have frequent contact with their grandson. This can continue with weekend visits. The defendant has remarried and has an 18 month old son. The Court does not find that the plaintiff's move should be enjoined because of these facts. The court notes that neither D'Onofrio nor Tropea
encountered such a situation.
The parties' child appears to have adequate educational opportunity whether it be in Connecticut or New Jersey.
5. The court finds that it is feasible to preserve the relationship between the defendant and his son with a suitable visitation arrangement including frequent weekends, summer vacation, school and holiday vacations and frequent telephone contact. The court includes family gatherings by the paternal grandparents and by the defendant's siblings as desirable.
6. The court is not convinced that the hostility will CT Page 10292 increase due to the plaintiff's move. As commented on by the court in # 1 and #3 above, civility, mutual respect and traditional politeness toward one another can only reduce any hostility.
The defendant's present wife has injected herself into the parties' custody matters by entering the plaintiff's erstwhile living quarters in New Canaan without the landlord's permission, taking pictures, removing a card (Defendant's Exhibit A) addressed to him and destroying the envelope which contained the note all in order "to help our case." Further, threatening to call the police when the plaintiff arrived at the defendant's home with the parties' son wasn't helpful. The post trial brief filed by the minor's attorney urges the plaintiff to try to get along with the defendant's current wife. The court's view is that the defendant's current wife should be included in the admonition.
The court has concluded that the defendant has not shown that the child's removal to New Jersey is not in his best interest. The defendant's motion is denied.
HARRIGAN, J.