[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Factual Background
The defendant (mother) moves to modify the judgment of dissolution dated May 22, 1997 as modified on January 13, 1998.
The original judgment provided that if either party intends to relocate permanently outside the State of Connecticut, they shall give the other party at least sixty days written notice of such intent. On or about September 10, 1997, the mother notified the plaintiff (father) of her intention to move to Florida with the two minor children issue of the marriage, namely Victoria now 8 years of age and Lauren, now 6 years of age. The parties under the terms of the dissolution, had agreed to joint custody, with the physical residence of the children to be with the mother.
Thereafter the father, on December 26, 1997, moved for contempt on the grounds, inter alia, that the mother has refused to inform him of her relocation plans.
In response to said motion, the Court enjoined the mother from permanently moving the children out of Connecticut until further order and ordered a Family Relations study on the advisability of such a move. The Family Relations report having been completed the mother filed the present motion to modify by granting her request to relocate the primary residence of the children to Florida. The father filed an objection to said motion to modify and the matter was heard as a contested hearing. Both parties were ably represented by counsel and an attorney for the minor children was appointed to represent their interests. Said attorney was present and participated at the hearing.
Testimony was provided by the parties, the maternal grandparents George and Janet Eagleson; Christine Andersen, a counselor with a divorce support group which the mother had CT Page 15376 attended; Susan Tandy and Kathleen Murphy, both of whom are friends of the mother, and Nettie Watson, the current "girl friend" of the father. The Family Relation's report was also entered into evidence.
The recent case of Ireland v. Ireland, 246 Conn. 413 (1998), directs this Court as to the procedural standards to be followed when the residential parent desires to relocate the children out of state.
 Discussion
The residential parent has the initial burden of proving by a preponderance of the evidence that the relocation is for a legitimate purpose and, further, that the proposed location is reasonable in light of that purpose. The Court finds the mother has met this burden. There was credible testimony that there are three reasons for the relocation. Primarily, the support of the maternal grandparents, Mr. Mrs. Eagleson, who live in the same community in Florida as the mother's home. The mother and minor children are close to the grandparents and they provide baby-sitting, financial help and emotional support to the mother. The paternal grandparents are deceased. The Eaglesons expect to live in Florida from October to May and so for the majority of the year will be available for support as needed. In the warm months they plan to come to Manchester, Connecticut to a house they own in that town. Under the mother's proposed plan, the children would have extended vacation with their father during the summer.
A second reason advanced for the move is that the cost of living in Florida is cheaper in Florida than in Connecticut. There was testimony that property taxes are less and Florida has a homestead deduction of $25000. Heating costs and food costs are also less expensive. The mother could buy a house in Florida more comparable to the family home in South Windsor whereas in Connecticut an equivalent house would be out of reach financially.
The third reason advanced is that conflicts between the parties would be reduced because there would be fewer exchanges between them. There is no question that the parties have substantial and continuing conflicts and, while there has been some marginal improvement in the recent past, the level of animosity remains high. Ms. Andersen testified quite logically that the conflict between the parties is damaging to the best CT Page 15377 interests of the children and opined that whether they live in Florida or Connecticut is far less significant than alleviating the conflicts. This opinion was echoed by the attorney for the children who argued that conflict elimination or alleviation be a factor in the Court's determination of the issue. The children are acutely aware of the disharmony between their parents.
The Family Relations report speculates that the mother's move to Florida may (emphasis added) be for the wrong reasons. The writer's reasoning for that opinion is based on interpretations with which this Court does not agree, based on the testimony and evidence presented during the hearing. Several witnesses including Mrs. Eagleson, Susan Tandy and Kathleen Murphy testified credibly that the plaintiff consistently told them her reasons for moving were the three reasons she testified to, and she never expressed that she wanted to relocate to get the children away from their father, or for revenge, or for any other improper reasons. The Court's satisfied the proposed relocation is for a legitimate purpose. It follows that the proposed relocation has been established to be reasonable in light of those three stated purposes, under the facts as found by the Court.
The burden thus shifts to the father to prove by a preponderance of the evidence that the relocation is not in the best interests of the children.
His position is that, at the present time, he sees the children on Wednesdays from 5:30 p.m. to 8:30 p.m.; every other weekend from 6 p.m. Friday to 6 p.m. Sunday; Father's Day, alternate holidays and alternate school vacations; shared birthdays and two weeks during the summer. Since he sees them regularly he is in a position to be involved in their day to day lives by helping with homework, for example and by attending parent-teacher conferences. His concern is that his parental influence will diminish and his relationship with the girls would change. He argues that the cost of travel would make it difficult for frequent visits, that the cost of medical insurance which he provides through his employer would be adversely affected since the children would be out of network. Also, he expresses concern about being denied access.
The mother, in arguing that the best interests of the children would be served by the relocation points to the reasons for the move as discussed herein and in addition owns an CT Page 15378 attractive single family home in Florida in a planned community. There are quite a few children of the same ages as the Anzalotti girls (as opposed to Manchester where they now live where there are only a few).
Florida has a good school system with modern computers, buildings and curriculum. This finding is confirmed by the testimony of Kathleen Murphy who is the principal of an elementary school in Milford, Connecticut. Mrs. Murphy accompanied the plaintiff to Florida where they met with the principal of the school the girls would attend. She was impressed with the curriculum, support staff and the fact that there are classes in character education. Class size is similar to that in Connecticut and she found the principal to be energetic. The children could walk to school .8 of a mile from the home, on neighborhood streets. The mother would accompany them and the grandparents are nearby during most of the school year for help as needed. The school system and arrangements would be at least equal to those in Connecticut and probably somewhat better.
There are good recreational facilities in Florida, including a YMCA with sports programs and swimming.
The children are familiar with the area though visits with their grandparents and enjoy the area.
While a move to Florida would obviously necessitate a change in visitation schedules, an extended summer vacation with other vacations during the year should provide sufficient contact to allow the father to maintain his parental relationship with the girls. As Ms. Andersen said, the distance is far less significant than the relationship the parents have with the children. In other words, a good relationship will remain a good one regardless of distance.
To address the father's concern that the mother will find it easier to deprive him of access if she is in Florida, should that problem arise the Court can deal with it appropriately. He has been exercising his visitation in Connecticut (though not totally with out conflict) but the conflicts should be minimized because the frequency of the contacts will be fewer. Fewer contacts means fewer opportunities to quarrel about schedules or conflicts in the children's schedules which have been a cause of past arguments. CT Page 15379
While some of the language in Ireland v. Ireland is dicta, it is instructive to the trial courts and this Court points to the following phrases in Ireland to support its decision in this case.
 1. "[t]he clear trend has been that of increasing leniency toward the parent whom the child has been primarily living." (p. 425)
 2. "Our society is an increasingly mobile one . . . repeated separate moves by each parent are coming to represent the norm."
 3. "The realities of divorce make clear that the dissolution of a marriage . . . inevitably alters the character of the parental relationship of both . . . parent[s].
 It may not be realistic to try to preserve completely the quality and nature of the relationship that the noncustodial parent enjoyed with the child, especially if such preservation is maintained at the cost of the custodial parent's ability to start a new, potentially improved life for herself or himself and the child. Consequently, many states now recognize that marriage dissolution results in the creation of a new family unit, consisting of the custodial parent and the child, and that what is beneficial to that unit as a whole benefits its individual members.
 4. The notion that relocation might be in the best interests of the child, in large part because such a move would also be in the best interests of the custodial parent, finds support in the writings of legal scholars. "Prohibiting a move by the custodial parent may force that parent to choose between custody of his or her child and opportunities that may benefit the family unit, including the child as well as the parent. . . . Imposing this choice can be severely detrimental to the psychological and economic well-being of the parent over many years. It also has the potential for burdening the parent-child relationship for many years, regardless of the choice the parent makes. A parent who relinquishes a significant life-enhancing opportunity in order to maintain custody of a child may become distraught and depressed. . . . The child may well experience diminished CT Page 15380 parenting as a result of the parent's discouragement and suffering. . . . The child may suffer great anguish and blame himself or herself for having stood in the way of the parent."
 It should be noted, however, that allowing relocation need not be only for the purpose of avoiding such negative effects. The move may offer benefits, such as the promise of economic, emotional, financial, or educational enhancement of the child's life. In other words, the prospects awaiting the custodial parent in a new location may be such that the child's best interests would be served by the custodial parent being allowed to pursue those prospects.
 5. "An approach that takes into consideration the interests of the new family unit as a whole is consistent with the best interests of the child standard." (p. 430).
In considering all the evidence presented in accordance with the law and guidance of Ireland, this Court concludes the best interests of the children would be served by permitting them to have their primary residence in Florida with their mother, and it is ordered.
The father shall have reasonable rights of visitation, which shall include the following:
 1. From July 1st to July 3rd on an annual basis. The father may, however, elect to split the summer vacation into 2 — 2 weeks segments during the children's summer vacation but shall notify the mother of his intent to split the summer vacation by May 15 of such year.
 2. From December 26, through January 3rd on an annual basis, however if school commences before January 3rd, the vacation shall end the day before school commences.
 3. One week during spring (April) school vacation (from Saturday to Saturday) on an annual basis.
 4. The following 3 day holiday weekends in Florida: Labor Day, Martin Luther King Day, Presidents Day. If visitation is exercised on any of these holiday weekends, CT Page 15381 it shall be exercised in the state of Florida.
Unless the flight is a direct flight between destinations, one parent or other adult family member (grand-parent or sibling of a party) shall accompany the children on any airplane flight between Florida and Connecticut. The parents shall share the cost of air fare of said children and any accompanying adult.
The father shall have telephone access to the children and the mother shall not place unreasonable restrictions on such contact.
The Court retains jurisdiction of this matter to insure compliance with orders of access by the non-residential parent and to make such changes as appropriate under the circumstances. (Connecticut is determined to be the home state of the children for this purpose.)
Klaczak, J.