[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on July 24, 1993 at Boston, Massachusetts. They moved to Connecticut in April, 1998 and have resided continuously in this state since that time. They have one child issue of the marriage, Joshua, born May 2, 1997. The evidence indicates that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff is 31 years old. Although she suffered from Cushing's disease and required surgery for removal of a tumor in 1998, she reports that currently she is in good health. She holds a bachelor of arts degree in child development and a master's degree in education. The plaintiff worked during the marriage until the birth of her son.
The defendant is 30 years old. He also enjoys good health. He is a graduate of Boston College, with a degree in management and accounting with training in finances. He has been employed as a portfolio manager in an investment firm. Presently, he is self-employed and operates a venture capital firm concentrating on private Internet companies.
This was a rather short and stormy marriage. The differences in the personalities of the parties prevented them from getting along and from solving their problems. Each must bear some responsibility for the failure of their relationship. The court declines to assess greater fault against either party.
This was a fully contested dissolution action. It included consideration of the plaintiff's desire to move with her child to CT Page 149 the Boston, Massachusetts area. The issue of relocation is always difficult for the court. It requires a Solomonic decision that usually leaves both parties dissatisfied.
The trial consumed seven days. Several witnesses were called and many exhibits were presented. A guardian ad litem was appointed and participated in the trial. Counsel for the parties and the guardian ad litem were very helpful with their thorough and knowledgeable presentations. They are complimented for their efforts.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-56, 46b-62, 46b-81,46b-82 and 46b-84 in reaching the decisions reflected in the orders that follow.
 I. CUSTODY
Both parties have requested that they be awarded joint legal custody of their son, Joshua. Although the court has some reservations as to the ability of the parties to communicate intelligently and unemotionally on child rearing issues, it will honor their wishes and give them the opportunity to work together as responsible parents. It is strongly recommended that they consult a mental health professional for assistance when any problems arise.
The significant dispute involves where the child will reside in the future. The plaintiff wishes to relocate with the child to the Boston area, and the defendant wants the child to live in the Greenwich, Connecticut area where the defendant lives and operates his business.
Both sides presented witnesses who validated the parties' statements about their interest in the child's welfare and their abilities as custodial parents. The court is convinced that those representations are true, that each parent is concerned about the child and is a capable custodian.
Dr. Harry Adamakos, a clinical psychologist, was selected by the parties to perform an evaluation of the family and assist with the custody issues. He testified over a period of two days and his report was admitted into evidence. (Exhibit 30).
Doctor Adamakos concluded: CT Page 150
(1) Each party is capable of effectively parenting the child. Each has a loving relationship and strong bond with the child;
(2) Joshua, age 2 1/2 at present, is a vibrant, energetic, creative little boy, who is functioning very well and is minimally affected by the contentiousness of his parents. This is because of the love and attention each parent has given to the child;
(3) Joshua would benefit greatly from having regular contacts with both parents so he could integrate both of his parents' strengths. This would best be accomplished if the parents live in close proximity to each other.
Doctor Adamakos recommended:
(1) The court impose geographical parameters as to where the parents may live in relation to each other. This arrangement should remain in place at least until the child completes kindergarten;
(2) The parties should share joint legal custody;
(3) The parties should engage in post divorce counseling to learn how to co-parent their child;
(4) The plaintiff, who has been the primary caretaker of Joshua over his young life, should be designated the primary physical custodian. However, the defendant should have physical custody a substantial period of time approaching fifty percent;
(5) Each parent should individually seek counseling.
The guardian ad litem embraced the recommendations of Doctor Adamakos and urges the court to follow them.
Section 46b-56 of the General Statutes provides that the best interests of the child must always govern decisions involving custody. With that standard in mind, the court has carefully weighed the evidence presented.
The primary dispute in this matter is the plaintiff's wish to CT Page 151 relocate with her child. The case of Ireland v. Ireland,246 Conn. 413 (1998) dealt with the issue of relocation of children. In that case the parent who wished to relocate had previously been designated the primary physical custodian of the child. That situation caused the Supreme Court to allocate the burden of proof between the parties as to reasons for wanting to move and what was in the child's best interests.
In the present case, we are involved with the initial determination of the issue of custody with neither party having been designated the primary physical custodian previously. Although the factors and considerations set forth in the Ireland
decision were of interest to the court and were utilized by it, this court has not allocated the burden of proof as required in the Ireland situation.
There is little doubt that both parties have a loving, caring interest in their son. Both are strongly bonded with him, and each has been actively involved in his life and wants to continue to do so. As a result of their efforts, Joshua is thriving and is a healthy, happy and energetic tyke.
The plaintiff wishes to return to the Boston area where she and the defendant were raised. The parties moved to Connecticut approximately eighteen months ago to accommodate the defendant's job opportunity. The plaintiff has her family and friends in Massachusetts. She has potential job opportunities there because of her contacts during her college days. The desire to move "back home" is not unreasonable.
The court has concluded that it would serve Joshua's best interests if he is permitted to relocate to Massachusetts with his mother. The plaintiff's returning to the Boston area will permit her to have the opportunity to improve her quality of life and at a minimum her mental health. The child can only benefit by this result.
The only significant disadvantage to the child's moving as expressed by the defendant and the evaluating psychologist is that the frequency of contacts between father and son would be reduced. This problem is minimized by the proximity of Boston to Connecticut. The court believes that the "geographic proximity" requirement suggested by Doctor Adamakos is satisfied if the plaintiff lives in the Boston area. CT Page 152
Connecticut and Massachusetts are adjoining states connected by a super highway network. Boston is less than two hundred miles away from the Greenwich area by auto travel. A frequent and regular airline shuttle from LaGuardia airport to Boston is available to the defendant who lives in close proximity to the New York airport and who travels to New York up to three times a week. Further, the defendant testified he has a flexible work schedule and does not work on days the child is with him. The inconvenience to the defendant and child of increased travel caused by the relocation is outweighed by the benefits the child will receive from accommodating the needs of his mother.
The following orders may enter:
(1) The parties shall have joint legal custody of the minor child, Joshua. They shall jointly make decisions affecting the well-being of their child, and they shall consult each other on all major developmental decisions. If the parties are unable to agree on issues of importance, they are urged to seek assistance from a mental health professional before returning to the court for resolutions of their differences. It would be in their best interests to do so from an emotional and financial standpoint.
(2) The joint legal custody arrangement shall take effect upon the earlier of the date provided below for the plaintiff to vacate the marital home or her actual vacating of the home. Until the date for the plaintiff's move, or her earlier vacating of the marital residence, the present pendente lite parenting schedule regarding the care of Joshua shall continue.
(3) The plaintiff shall have primary physical custody of the minor child and may relocate to the Boston, Massachusetts area with him.
(4) The defendant shall have liberal and reasonable rights of parenting time with his son. The court believes that the defendant will attempt to maintain a meaningful relationship with Joshua.
(5) The following shall be the general visitation schedule on a four week recurring schedule. The parties are invited to adjust this schedule, but may do so by written agreement only. CT Page 153
A. Week One
 The defendant shall have the child with him from Friday at 5 p. m. until Sunday at 5 p. m.;
 B. Week Two and Week Three
 The defendant shall have the child with him from Friday at 5 p. m. until the following Wednesday in week three at 12 noon;
 C. Week Four
 The defendant shall have the child with him in the Boston area from 10 a.m. until 6 p. m. on Wednesday or any other week day agreed to between the parties; also the defendant shall have the child with him from Friday at 5 p. m. until Sunday at 5 p. m.
 D. The parties shall meet at an agreed location in the Hartford, Connecticut area for the pick up and delivery of Joshua for his visits with the defendant. If they are unable to agree, they shall meet at the West Farms Mall in West Hartford. If either party desires, he or she may permit a responsible adult to deliver the child.
 E. The parties shall alternate legal and religious holidays.
 F. Each party shall have the child with him or her on their respective birthdays and shall alternate the child's birthday. For the child's birthday in the year 2000, he shall be with the plaintiff from 9 a.m. to 12 noon and with the defendant from 12 noon until 6 p. m. Thereafter, the schedule will alternate accordingly.
 G. The child shall be with the plaintiff on Mother's Day and with the defendant on Father's Day.
 H. Starting with calendar year 2000, the parties shall annually be entitled to three (3) non-consecutive one-week periods with the child with no mid week visitation by the other parent. In even numbered years, the plaintiff shall notify the defendant of her selections first by March 1st and the defendant shall advise the plaintiff of his choices by April CT Page 154 1st. On odd-numbered years, the procedure shall be reversed with the defendant making the first choice.
6. Each party shall keep the other informed as to her and his residence and telephone numbers. Each party shall have reasonable access by telephone to the child during the days when the child is with the other parent. Each parent shall immediately inform the others about any emergency concerning the child. Each parent shall provide information, including contact telephone numbers, in advance, about any vacation taken with the child away from the parent's home.
 In an attempt to permit the minor child to have substantial contacts with each parent, the court has designed a liberal parenting schedule. Its implementation may indicate a need for adjustments and modifications. The court reserves jurisdiction to review the situation with the parties, upon the request of either. They are urged to attempt to make any changes by agreement and to seek the assistance of Doctor Adamakos or any professional and the guardian ad litem before petitioning the court.
 In any event, the parenting plans should be reviewed after Joshua completes kindergarten to accommodate his attending school on a full time basis.
 II FINANCIAL ISSUES
After the completion of the evidence, the parties reported a settlement of the financial issues. They tendered a written Final Financial Stipulation, dated December 15, 1999 for approval by the court. It was marked Court Exhibit #1.
The court has reviewed the agreement and finds it fair and equitable. It may be incorporated by reference into the judgment entered on this date. A copy thereof is affixed to this memorandum.
In addition to the financial orders agreed to by the parties, the following additional orders may enter. The court believes the parties inadvertently failed to include them in their stipulation. If the court is mistaken, it reserves jurisdiction to vacate or modify the following orders, after hearing any objections from either party.
 1. As to paragraph 2b of the financial stipulation, Section 46b-84(e) of the Connecticut General Statutes shall apply.
 2. Each party shall be responsible for his or her debts listed on his or her financial affidavit, if not ordered otherwise in the stipulation.
 3. Each party shall retain his or her own assets unless otherwise ordered in the stipulation.
 4. The plaintiff's maiden name of Aronson is ordered restored.
Judgment may enter accordingly.
NOVACK, J. CT Page 155