[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint, dated April 25, 2000, the plaintiff wife, Catherine Bayna, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, child custody and support, alimony, equitable distribution of property and other relief. The defendant, Perfecto Bayna, appeared through counsel. On June 7, 2000, the court appointed Attorney Jayne Kinney-Knotek as guardian ad litem to represent the interests of the minor children. The parties appeared with counsel on various dates commencing August 18, 2000 through October 18, 2000. The parties presented testimony and exhibits at said hearings. The court heard final argument from the parties and guardian for the minor children on November 3, 2000. The court, after reviewing the testimony and exhibits, makes the following findings of fact:
The plaintiff wife (whose maiden name was Catherine Hebert) married the defendant husband on February 11. 1996, at Hartford, Connecticut. She has resided continuously in the State of Connecticut for one year next CT Page 15751 receding the date of the filing of this complaint. All statutory stays expired. The parties have two minor children who are the issue of the marriage: Justus M. Bayna, born June 13, 1996, and Gregorio J. Bayna, born August 12, 1998. The wife has given birth to a baby boy subsequent to the trial and prior to this memorandum of decision. Said minor child was born on October 28, 2000. The issue of said child's paternity, custody, support, visitation and so forth shall be left to a hearing postjudgment. No other minor child has been born to the plaintiff wife since the date of the marriage. The court further finds that no state or municipal agency is contributing to the support of the parties and/or their children.
The plaintiff is a 38-year-old high school graduate. She was born and raised in the state of Vermont. The plaintiff had been married on two previous occasions. During the first marriage, the plaintiff gave birth to two boys. Said marriage was dissolved by decree of the Connecticut Superior Court wherein custody of the two minor boys was awarded to her ex-husband. The plaintiff's second marriage was also dissolved by Connecticut court decree with no issue resulting from said union.
In addition to her graduation from high school, the plaintiff matriculated at Asnuntuck Community College in Enfield, Connecticut, but failed to earn a college degree. During her first two marriages, the plaintiff was a housewife/mother, a mail sorter and restaurant waitress while living in Vermont. The plaintiff returned to Connecticut in 1983 and worked as a secretary at a collection agency for a period of one and one-half years on a full-time basis. She left said employment for a better position at Aetna.
The plaintiff worked at Aetna from 1986 through the layoff of 1993. She started as a secretary in the portfolio management department and worked her way up to a technical position in the finance department. Her income rose from $18,000 per year to a total of $34,000 per year when she was terminated as a result of an industry-wide layoff.
Since her layoff at Aetna, the plaintiff has been employed in 1994 to 1995 as a custodian on a temporary basis at an educational facility. In 1995, she became secretary to the chief executive officer at Ensign-Bickford on a full-time basis. She worked there for a year and one-half and earned a salary of $28,500 per year. In mid-1996, she was laid off from Ensign-Bickford while she was pregnant with Justus. Since said date and prior to the plaintiff's latest move to Vermont with her two children, the plaintiff did not seek re-employment due to an agreement with the defendant. The parties agreed that the plaintiff would remain home and care for the children while the defendant worked outside of the home as the family's breadwinner. CT Page 15752
The plaintiff is presently employed as a secretary at the Dutton Nursery School, which is located near her home in Vermont where she presently resides with the two minor children. Said secretarial position pays her $340 per week gross based on a 40-hour week. The plaintiff also is qualified for free medical care for the children on the Dr. Dinosaur Vermont Plan, providing for dental, medical, prescription and optical coverage at no cost. Her employer will provide coverage for the defendant at the rate of $47 per month.
At the time of trial, the defendant was 38 years old. He was born in Ohio and moved to Connecticut with his family in 1965. He has resided in Connecticut continuously since 1965. The defendant graduated from high school in 1980. He received an Associate of Science degree in mechanical engineering from Thames Valley State College after completion of a three-year program. Subsequent to his education at Thames Valley, the defendant attended other educational courses and programs in his field as an operating engineer. The defendant completed apprenticeship program classes from 1989 through 1994. He was certified as a heavy-equipment operator and has received license privileges from the State of Connecticut The defendant also matriculated at Hartford State Technical College from 1991 through 1994, receiving a degree of Associate of Science in civil engineering. The defendant also completed an apprenticeship program at the Carpenters' Union Local No. 24. Since completion of his apprentice program, he has attained the status of a journeyman carpenter with the union. The defendant also enrolled and completed Bible study classes in furtherance of his spiritual wellbeing.
As to the employment history of the defendant, the defendant worked at a convalescent center from 1980 to 1983 while attending school. In 1983, the defendant sought industrial employment at Electric Boat in Groton, Connecticut, as a materials technician until he left for a new job at Millstone in 1985. He was hired as a construction inspector at Millstone at the rate of $10 per hour until 1988 when the defendant was hired by a vendor company known as Transco. The defendant worked at Transco as a construction inspector at the rate of $14 per hour from 1988 through 1989. He left Transco for a better job at Custom Marine, Inc. where he worked as an engineering assistant from 1989 to 1990 at $11 per hour. In 1990, the defendant left Custom Marine for a job at Auwood Company in Groton, Connecticut as a quality control inspector, and earned a salary of $24,000 per year.
The defendant left the desk job at Auwood and started his own construction company known as Rick's Construction. He performed landscape and minor construction repairs and carpentry work in the early 1990s. The defendant also was employed for three years as a utility person at Bolton CT Page 15753 Construction Company at the rate of $11.50 per hour and later as a materials inspector for Special Testing Labs in Rocky Hill, Connecticut, for approximately two years at the rate of $12.50 per hour. The defendant left to obtain employment as a water pump station monitor at the rate of $11 per hour. The defendant only remained at said position for a period of three months when he changed positions again as a materials tester for the Tri-State Materials Testing Lab for a period of one year from 1995 to 1996 at the rate of $12.50 per hour.
In May of 1996, the defendant worked as an apprentice for the Local 24 Carpenters Union. After completion of his apprenticeship, the defendant was employed as a journeyman carpenter. From 1996 through 1999, the defendant received calls from the union when work was available. There were times during the year when he was laid off; i.e., no union work available. During said times, the defendant worked on rental properties he purchased. The defendant also established his own carpentry business known as Creative Carpentry in 1998. The defendant has performed carpentry work for various neighbors. He has failed, however, to convince the court that he has contracted for sufficient jobs to meet his financial obligations in the future.
Since January 1, 2000, the defendant has been unavailable for union work. The defendant has refused union work on the basis of his claim of (1) marital stress (2) need to rehabilitate his rental properties and (3) further obligation to complete outstanding contracts in his carpentry business. The defendant can earn the hourly rate of $21.85 plus benefits as a union carpenter. Those benefits include medical, dental, optical and major medical insurance, including provisions for free counseling for the defendant and his family. Said benefits also include a retirement plan.
At the initial trial hearing date, the defendant claimed his income to be $126 per week. His financial affidavit reflected gross weekly income of $400 per week from his carpentry business and a negative $274 per week in net rentals from his rental property, resulting in a net weekly wage of $126 per week. The defendant claimed total weekly expenses of $678 per week and payments on liabilities of $833 per week, leaving him a net weekly shortfall of over $1300.
On the trial date of October 18, 2000, the parties stipulated that the defendant's net weekly income from the rental properties was $220 per week a substantially different amount than reflected in the defendant's financial affidavit of August 18, 2000. As argued by the plaintiff, the court finds that the defendant exaggerated his ability to earn sufficient income from rental units and his fledgling carpentry business to meet his current and future financial obligation. The plaintiff also failed to present any medical evidence substantiating his claim that he could not CT Page 15754 work as a union carpenter due to the stress of the breakdown of the relationship and present proceedings.
The court concludes that based upon her limited education and physical possession of the minor children, the plaintiff is working to earning capacity as a secretary at the Dutton Nursery School. As to the defendant, the court concludes the defendant is not working to earning capacity or in the alternative is not reporting income necessary to pay all of the claimed weekly expenses and recurrent liabilities listed on his financial affidavits. The court hereby finds that the plaintiff has an earning capacity of $340 per week as represented by her in her testimony and as set forth on her financial affidavit of October 18, 2000. As to the earning capacity of the defendant, the court concludes that his earning capacity is substantially different than the weekly earnings from his carpentry business and his rental property as claimed at trial. Carey v. Carey, 29 Conn. App. 436 (1992).
As to future potential for earnings, the court has considered the unsubstantiated claim by the defendant that he removed himself from union employment as a result of the stress of the marriage. The court finds that the defendant has removed himself from union employment to better position himself to claim custody of the children. The defendant will not make sufficient income from his fledgling carpentry business and net property rentals to maintain all of his expenses including additional expenses to be incurred as a custodial parent. The defendant should be out working as a union carpenter to make sufficient funds to maintain his parental home and rental properties in addition to providing support for his children. The court also concludes that the defendant has no medical or psychological condition prohibiting him from working as a union carpenter. Carey v. Carey, supra.
The plaintiff and defendant first met in June of 1995 when the plaintiff was 33 and the defendant was 32. The defendant was residing at his home located at 2 Park Terrace, Hartford, Connecticut. The defendant was residing in an apartment in Enfield, Connecticut. Their courtship started with a chance meeting at a church. Faith and religion played an important part in the development of their relationship. The parties married in February of 1996 and commenced mutual residence in Hartford, Connecticut, at 2 Park Terrace. As previously stated, after the birth of her first child, the defendant was the family breadwinner while the plaintiff stayed at home to care for the family. The minor child, Justus, was born four months after the marriage, with the minor child, Gregorio, born on August 12, 1998.
The marriage was strained from the beginning due to disagreements between the plaintiff and the defendant as to (1) the location of the CT Page 15755 family home in Hartford (2) disagreements as to proper control and upbringing of the children and (3) stress caused by the plaintiff's children from her first marriage. In addition to the above problems, the plaintiff perceived the defendant as a violent, aggressive and angry man claiming physical abuse at the hands of the defendant on five separate occasions. In addition to the physical abuse, the plaintiff contended that the defendant would repeatedly belittle her, calling her stupid on repeated occasions. The defendant denied all claims of physical abuse and did, however, admit that the parties engaged in verbal combat in the past.
The court concludes that the marriage was fraught with problems from its inception based upon the analysis of the testimony received from the plaintiff, defendant and myriad of witnesses presented by the parties. To make matters more difficult, the defendant failed to advise the plaintiff that he was taking a second trip to the Philippines for business purposes and further failed to advise the plaintiff that he stayed overnight at a former girlfriend's home while working in Fairfield County as a union carpenter. Both of the above facts added to the problems in the marriage resulting in the wife's decision to separate and return to Vermont with the two minor children. The parties each presented different positions concerning the plaintiff's return to Connecticut with the children resulting in a further breakdown of the relationship requiring with the plaintiff returning to Vermont to permanently reside with the children.
The court has considered the testimony of the parties, their witnesses and documentary evidence submitted on the record. The court concludes had the defendant been more honest in regard to his anger control, business pursuits in the Philippines and dalliance with his ex-girlfriend, the marriage may have been saved. The plaintiff, however, is not totally blameless for the cause of the cause of the breakdown of the relationship. Her agreement to move in with the defendant in Hartford subsequent to the marriage and further involvement with her two minor sons (issue from a prior marriage) were also a cause in the disintegration of the marital relationship. The court will take these facts under consideration in conjunction with the other statutory factors in Conn. General Statutes §§ 46b-81 and 46b-82.
As to the assets accumulated by the parties during the marriage, it is clear from the evidence that the defendant entered the marital relationship as an owner of property at 2 Park Terrace, Hartford, Connecticut. The defendant purchased 8 Park Terrace, 3 Columbia Street and 44 Burton Street, Hartford, Connecticut, subsequent to the marriage, with title in his name only. The defendant quitclaimed an undivided one-half interest in 3 Columbia Street to the plaintiff by deed dated October 27, 1998. CT Page 15756
The plaintiff did contribute funds during the marriage from her ISP account at Aetna, which was cashed in subsequent to her date of termination. The defendant utilized funds obtained from rentals, union carpentry work and his sole proprietorship to pay the family bills, mortgages on existing property and downpayment funds to purchase the properties obtained by him during the marriage. The defendant, however, had the time to work for the union and in his own business because the wife was available to raise and nurture the children which she did consistently during the time she resided with the defendant.
The court is left with the unenviable task of determining which parent should raise the two minor children during the course of their minority. The court finds that the plaintiff moved to Vermont for legitimate reasons. She moved to Vermont to separate herself from the defendant as a result of the marital discord and volatile nature of the relationship between the parties. Her move was reasonable in light of the fact that the plaintiff was born and raised in Vermont. She has an extended family within close proximity to her residence. She was further able to obtain gainful employment in an effort to support herself and the two children. The plaintiff was initially employed at Dartmouth College as a secretary but later sought and obtained employment at the very nursery school where her children are enrolled. The court finds that the plaintiff's relocation to Vermont was done was a legitimate taking into consideration her emotional and financial well-being in conjunction with an appropriate environment to raise her children.
Defendant contends that the minor children should be returned to him to reside with him at 2 Park Terrace, Hartford, Connecticut. The defendant contends that he is the better custodial parent to raise his two children. He contends that the plaintiff is not capable of setting reasonable controls and cannot properly discipline the children. He uses the example of her two previous children whose custody was placed with an ex-husband who was also not capable of raising the children alone. The defendant claimed that the plaintiff's failure to seek and obtain custody of her children is indicative of a flaw in her personality which will have a direct affect on her ability to raise the children of this relationship. The defendant, however, fails to place any emphasis on the fact that he permitted his child born out of wedlock to be adopted by a step-parent without contest in a court of applicable jurisdiction.
The defendant further contends that he is financially more suitable and/or capable to raise the children. He proposed to the court that he would not work as a union carpenter until the youngest child is in school on a full-time basis. He further contends that he will make sufficient money from his rental property and his sole proprietorship to adequately CT Page 15757 maintain all his properties and to raise his children in a healthy, wholesome environment. The defendant has also convinced the guardian ad litem that he should be the primary residential parent. The guardian recommends that the children should reside with him in Connecticut with the mother visiting from the state of Vermont. (See Guardian Ad Litem's Recommendations, Defendant's Exhibit V.) The guardian ad litem has concluded that the defendant's conduct since the breakdown of the marital relationship places him in a better position to raise the children.
The defendant has attempted to convince the court, as he has convinced the guardian ad litem, that he can raise his children while not employed on a full-time basis by collecting rents and performing contract services in his sole proprietorship. The court concludes that the defendant has painted a picture that is an economic illusion and not based on fact. The court concludes that the defendant cannot maintain the debtload on his properties without obtaining substantial, gainful employment in addition to the work performed in a sole proprietorship. The record is devoid of sufficient contracts or credible testimony from the defendant that he can sustain himself and the children by working as a self-employed carpenter. The defendant has available to him union carpentry employment with a payscale of over $21 per hour with health insurance benefits, retirement and so forth. The court concludes that if custody were granted to the defendant, it would only be a short matter of time that he would lose his properties or be required to return to full-time union work.
The court, however, does not accept the defendant's contention as approved by the guardian ad litem that he is the better custodial parent. The court hereby concludes that the minor children should be raised by the mother in the state of Vermont. The court further concludes that the mother's relocation to Vermont was legitimate and reasonable. The court is convinced that it would be in the best interests of the children to be raised by their mother in Vermont on a daily basis, with the father having liberal rights of access on weekends, school vacations and summers. While the court agrees with the defendant that the holding ofIreland does not apply to the present controversy, the plaintiff has proved to the court that her move is legitimate and reasonable and that it is further in the interests of the children to be raised by her in Vermont. Ireland v. Ireland, 246 Conn. 413 (1998).
The record is devoid of any evidence of inappropriate care or upbringing of the minor children by either party. All of the witnesses presented by the plaintiff and defendant testified that the plaintiff was and is a good mother. She was characterized as loving and attentive in the upbringing and rearing of her children. The witnesses also testified that the defendant loved his children. They further confirmed that while the children are in his care and custody he is also attentive and CT Page 15758 loving.
The defendant made wholesale attacks on the plaintiff's ability to control the children and to properly discipline them. However, his position as to mother's inability to raise the children in an appropriate way was not substantiated and/or corroborated by any of the other witnesses. The court has taken into consideration the position of the GAL and the defendant concerning his contention that the children should be raised with him in Connecticut. The court has also considered the Hartford Montessori program and ethnic diversity the school and community where the defendant resides.
The court concludes that the mother should have sole custody of the minor children and reside with them in Vermont based on the following considerations:
1. Her move to Vermont to establish a new residence to raise her children was legitimate and that the new location, i.e., in close proximity to her extended family, was reasonable in light of such purpose.
2. Defendant obtained suitable housing for the minor children in Vermont in addition to the obtaining of employment at the nursery school where the children are enrolled.
3. The plaintiff was clearly the party who raised the children and dealt with their needs on a daily basis from the time of their birth to the time of the parties' final separation.
4. The defendant will have financial ability to interact and parent his children once he obtains substantial, gainful re-employment as a union carpenter. The defendant cannot sustain himself financially from rents and his sole proprietorship without the infusion of additional income and/or capital. The defendant's many job and career changes, set forth above, were also considered by the court.
5. The educational opportunities in Vermont in conjunction with mother's work schedule and proximity to her children at the very least are equal to the educational opportunities afforded by the Montessori School and public schools in the city of Hartford.
The court has considered all of the statutory factors concerning custody and visitation as set out in Connecticut General Statues §§ 46b-56, 46b-56a and 46b-59. The court has also considered all of the factors in Connecticut General Statutes §§ 46b-81, 46b-82 and other pertinent statutes, tax implications, earnings and earning capacity CT Page 15759 differential, causes for the breakdown of the marriage and the consequences of financial awards set forth below. The court, with jurisdiction in this matter, finds that all of the statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. Custody of the minor children.
The plaintiff wife shall have sole custody of the two minor children, Justus A. Bayna, born June 13, 1996, and Gregorio J. Bayna, born August 12, 1998. The plaintiff shall be permitted to reside in the state of Vermont with the minor children. If the plaintiff intends upon relocating with the minor children at a distance greater than the existing distance between the present residence of the plaintiff and the residence of the defendant at 2 Park Terrace, Hartford, Connecticut, the plaintiff shall provide the defendant with written notice ninety days prior to said proposed relocation.
2. Defendant's Visitation.
The defendant shall have reasonable, liberal and flexible rights of visitation with the minor children, Justus and Gregorio, including but not limited to the following: every other weekend from Friday at 5 p.m. until Sunday at 5 p.m. with pickup and delivery at a mutually agreeable location within the vicinity of Deerfield, Massachusetts. The defendant shall also have visitation with the minor children for the winter and spring school vacations in addition to one half of the summer school vacation.
3. Vacations:
A. Summer: The defendant shall have the children for every summer beginning the first Friday of following the last day of school until the Sunday prior to the first day of school, with the plaintiff having the children every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. This schedule will commence at the closing of the 2000-2001 school year. The defendant will pick up the children at the agreed upon location on said Friday. In addition, the plaintiff shall have the two boys for one full week for vacation in the summer with notice to the defendant by May 15th of each year.
B. School Year: During school year vacations (Christmas, February and April) for the 2000-2001 session will be as follows:
Christmas Vacation — The defendant shall pick up the CT Page 15760 children at the agreed upon location on December 26, 2000 at 5:00 p.m. Children shall be returned to the plaintiff on Sunday, December 31St at 5:00 p.m. Plaintiff shall have the children from December 31St at 5:00 p.m. until the next scheduled weekend with defendant.
February Vacation — Defendant shall have the children from the Friday afternoon at 5 p.m. that the week starts until the following Friday at 5 p.m. Defendant shall pick up the children that Friday at 5:00 p.m. and return the children the Friday before school begins to the agreed upon location.
Spring Vacation
April 2001 — Defendant shall have the children from the Friday afternoon at 5 p.m. that the week starts until the following Friday at 5 p.m. Defendant shall pick up the children that Friday at 5:00 p.m. and return the children the Friday before school begins.
4. Holidays/Long Weekends:
Thanksgiving — Father shall have the children during the Thanksgiving 2001 recess Schedule will alternate each year.
Mother's Day/Father's Day — The Plaintiff shall have Justus and Greg every Mother's Day and the Defendant shall have Justus and Greg every Father's Day regardless of on whose weekend these holidays fall on.
5. Telephone Contact: The minor children shall have unlimited and uninterrupted telephone contact with their parents when with the other parent; at the calling parent's expense.
6. Child Care Providers: Each parent shall be entitled to names, addresses and relationship to the party on anyone caring for the child in the absence of the parent.
7. Ongoing Education: It is recognized that neither parent has begun or completed the required parenting education course. Both parents shall complete the course or comparable program as required by the State of Connecticut. Neither party shall file a motion to modify custody and/or visitation until that party has filed a certificate of completion with the clerk of the court.
8. Child Support.
The defendant shall pay guideline child support to the defendant in the CT Page 15761 weekly amount of $158.00 per week. The court adopts the plaintiff's argument that the defendant has $825 per week in income available to him by way of earnings and/or earning capacity as set out in the memorandum re income calculation for the defendant father for child support, dated and filed on October 18, 2000. The court also finds that the plaintiff mother (as previously stated) is working to earning capacity in light of the fact that she has custody of the minor children and is employed on a full-time basis as a secretary for the Dutton Nursery School. The plaintiff and defendant are further ordered to maintain their minor children for health insurance purposes on any plan available through their place of employment, including but not limited to the Dr. Dinosaur plan in the state of Vermont and the defendant's carpenters union health insurance plan. The plaintiff shall pay the first $100 of unreimbursed and uncovered health care expenses per year per child. Thereafter, the defendant shall pay 59 percent and the mother 41 percent of any unreimbursed and uncovered health care expenses. In addition, the defendant shall pay to the wife the sum of $25 per week for child care expenses based upon the percentage allocation as follows: 41 percent payable by mother; 59 percent payable by father. Said payments shall be made by the defendant directly to the plaintiff until he is employed as a W-2 employee. Thereafter, the defendant shall pay said weekly amounts by way of immediate wage withholding payable through the state disbursement unit for the benefit of the plaintiff. The provisions of Connecticut General Statutes § 46b-84 shall also apply.
9. Real Property 
The plaintiff shall quitclaim all of her right, title and interest in and to the jointly owned property located at 3 Columbia Street, Hartford, Connecticut. The defendant shall also have all right, title and interest in and to the following real properties presently owned by him:
a. 2 Park Terrace, Hartford, Connecticut;
b. 8 Park Terrace, Hartford, Connecticut;
c. 44 Burton Street, Hartford, Connecticut; and
d. 121 Huntington Street, Hartford, Connecticut.
The defendant shall pay and hold the plaintiff harmless from liability on all of the existing mortgages on said properties. The parties stipulated that the 8 Park Terrace, Hartford property has equity of $2,007; 3 Columbia Street, Hartford property has equity of $7,262; and 121 Huntington Street, Hartford property has equity of $4,532. Said equity on those three properties totals $13,801. After reviewing the appraisals CT Page 15762 submitted by the property, the court concludes that the equity in the 44 Burton Street, Hartford property is $10,000. The court further finds the equity in the 2 Park Terrace property to be $34,750 as claimed by the plaintiff for a total equity of $58,551.00.
In consideration for the transfer of all of the above properties to the defendant, by way of property settlement and not alimony, the defendant is hereby ordered to execute mortgage note secured by a mortgage on all of the above properties in the amount of $20,000.00, at the simple interest rate of 5 percent per annum, payable in full on the first of the occurrence of the following events: (a) Sale of any individual property listed above or; (b) Refinance of any mortgage on any of the said properties; (c) death of the defendant.
10. Alimony 
The defendant shall pay periodic alimony to the wife in the amount of $50 per week until the first of the occurrence of the following events when alimony shall terminate: 1) death of either party; 2) remarriage of the plaintiff; 3) cohabitation by the plaintiff pursuant to statute; 4) January 1, 2005. Said alimony is nonmodifiable as to term only.
11. Motor Vehicles 
The defendant shall have all right, title and interest in and to the motor vehicles listed on his financial affidavit, Schedule D, dated August 18, 2000. Plaintiff shall have all right, title and interest in and to the motor vehicles listed on her financial affidavit, dated October 18, 2000.
12. Annuity Fund 
The defendant shall all right, title and interest in and to his annuity funds/retirement valued in the amount of $7,849.
13. Debts 
The plaintiff shall pay and hold the defendant harmless from any liability on the J.C. Penney and medical bill debts listed on her financial affidavit dated October 10, 2000. The defendant shall pay and hold the defendant harmless from any liability on the debts listed on his financial affidavit in Schedule B dated August 18, 2000.
14. Health Insurance 
The defendant shall maintain his own health insurance through the CT Page 15763 carpentry union and/or subsequent employer at his sole cost and expense. The plaintiff shall have the option of maintaining her own insurance through her place of employment or obtain health insurance through the defendant's coverage provided by the Carpenters Union Local 24 as provided by COBRA at her sole cost and expense. Both parties are ordered to execute any and all documents necessary and/or required by Carpenters Local 24 and/or health care provider to effectuate COBRA coverage for the plaintiff.
15. Life Insurance 
The plaintiff and defendant shall maintain any life insurance policies provided by their present and/or future employers with the minor children (including the newborn if found issue of the marriage) until the youngest child attains the age of 18 years.
Devine, J.