[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for dissolution of marriage was referred to the Regional Family Trial Docket by the Judicial District of Tolland at Rockville. The matter was tried over a period of 7 days. There were several witnesses including both parties, the Guardian Ad Litem, a family services evaluator and the court appointed family psychological evaluator. Many exhibits were entered as evidence. The court has considered all of the credible evidence presented to it and has carefully considered the respective statutory criteria for the orders to be issued. The statutory criteria will not be restated here.
The court finds that it has jurisdiction over the marriage. One party has lived in Connecticut continuously for more than one year prior to the bringing of this action. The parties were married on November 19, 1994 in Thornton, Colorado. They have one minor child issue of this marriage, namely Savannah J. LaFleur, born April 17, 1997. Savannah was born in Connecticut and has lived her entire life here. Connecticut is her home state. No other minor children have been born to the wife since the date CT Page 10020 of the marriage. The defendant wife has been the recipient of state assistance. The marriage of the parties has broken down irretrievably with no hope of reconciliation.
The parties have had a tempestuous relationship ever since they began dating. They began to live together before marriage and separated twice before they were finally married. They argued frequently in Colorado and here in Connecticut after Savannah was born. The events which led to the separation or the parties took place in late July and early August 1999. Mr. LaFleur's driver's license was under suspension as a result of an arrest for operating under the influence of alcohol. Ms. LaFleur was upset about Mr. LaFleur's drinking and about having to drive him around and to run all the errands. Mr. LaFleur's drinking was increasing. Ms. LaFleur was avoiding sexual relations and was sleeping with Savannah as a way of keeping her distance from Mr. LaFleur. They were having frequent loud arguments. One night, Mr. LaFleur was intoxicated and began acting in a bizarre and threatening way. He pulled Ms. LaFleur's pants and underpants down against her will while Savannah, aged 2, was watching. He swung his fist at Ms. LaFleur and made angry verbal threats. In the morning he was apologetic. But he continued to get intoxicated at night and act in an abusive way. Ms. LaFleur decided that she could no longer stay in the house. She left for a battered women's shelter on August 3, 1999. She did not tell Mr. LaFleur where she had gone.
On August 13, 1999 Ms. LaFleur, based upon the events described above, obtained an ex parte restraining order in the Hartford Judicial District awarding her temporary custody of Savannah and restraining Mr. LaFleur from entering her dwelling. On the same day Mr. LaFleur began this action in the Tolland Judicial District at Rockville. On August 24, 1999 the parties reached an agreement which 1) continued the restraining order to September 15, 1999 without prejudice, 2) granted Mr. LaFleur supervised visitation at Kidsafe, and 3) provided for Mr. LaFleur to have a substance abuse evaluation with Michael Haymes, Ph.D. On September 15, 1999 the parties agreed to extend the restraining order to October 12, 1999 on the same terms.
On October 4, 1999, Dr. Haymes completed the alcohol evaluation which concluded that "the results of the interview and testing cannot be considered to support a current diagnosis of Alcohol Abuse or Dependence." On October 12, 1999 the parties agreed to a further continuance of the restraining order until October 19, 1999 and to transfer the case to the Tolland Judicial District where the dissolution was pending. On November 4, 1999 the court entered orders by agreement 1) incorporating the restraining order file into the dissolution file, 2) extending the restraining order 6 months and, 3) modifying the restraining order to provide for joint custody of Savannah. CT Page 10021
The supervised visitations at Kidsafe went very well. On November 4, 1999 the court, by agreement, granted Mr. LaFleur unsupervised visitation with Savannah on Sundays from 10:40 a.m. to 3:20 p.m. and Wednesdays from 2:30 p.m. to 5:15 p.m. and ordered child support of $100 per week. On April 17, 2000 the court, following a hearing, ordered joint custody with primary residence to Ms. LaFleur. Overnight visitation by Mr. LaFleur was denied.
On May 28, 2000 there was a disruption at an exchange and Ms. LaFleur obtained a new ex parte restraining order preventing Mr. LaFleur from coming to Ms. LaFleur's place of employment. On June 12, 2000, the parties agreed to extend the restraining order for 6 months and established a new visitation schedule: Thursdays from 3 p.m. to 7:30 p.m., and Sundays from 9:00 a.m to 7:00 p.m.
The plaintiff husband, Robert LaFleur, is 36 years of age. He is in good general health. He has the equivalent of a high school diploma. He worked as a roofer in the construction trades for several years in Connecticut where he was raised. In 1992 he moved to Colorado because Connecticut was in an economic slump and he felt that employment opportunities were better there and because he had a friend in Colorado who urged him to relocate. He continued his work as a roofer in Colorado until after his marriage when he made a career change to go into the automobile business as a salesman. He worked at two different dealerships in Colorado until late in 1996 when he and his wife moved back to Connecticut. Ms. LaFleur was pregnant at the time. The move back to Connecticut was motivated by Mr. LaFleur's desire to be closer to his family and because he felt that opportunities in the automobile field were greater in Connecticut at that time. Mr. LaFleur presently works at Clyde Chevrolet in Vernon where he has net income of $579.24 per week. He lives at the apartment in Vernon where the parties had lived before their separation.
The defendant wife, Brenda LaFleur, is 32 years of age. She is in good general health. She was born and raised in Colorado and graduated from Boulder High School. She has worked at a variety of jobs during her life. She felt that the move to Connecticut was being made on a trial basis and that she and her husband would eventually move back to Colorado. In 1999 she took an extensive course in medical billing and is now qualified to work in this field in many different settings. Since 1999 she has worked at Prime Health Care in Wethersfield, Connecticut. She presently works 40 hours per week and has net income of $404 per week.
Savannah, age 4, is a lively, happy little girl who is not scheduled to CT Page 10022 begin kindergarten until September 2002. Savannah is not presently displaying any negative behavior as a result of the hostility between her parents. She loves both of her parents, interacts well with both of them, and enjoys her visits with her father. The family psychological evaluator, Stephen M. Humphrey, Ph.D., did a thorough study which concluded that, if Mr. LaFleur is not drinking, both parents have an equal capacity to nurture Savannah.
Mr. LaFleur's drinking is a major issue in the case. He was convicted of operating under the influence of alcohol when he was 18 years old. He was arrested in 1993 for an alcohol-related incident involving an argument with a friend. He was so intoxicated that the police offered to bring him to a detox center. In April 1999 he was arrested for operating under the influence of alcohol and for possession of marijuana. His license was suspended and he had to rely on his wife and friends for rides. He drank heavily during the marriage and would frequently come home intoxicated. Loud, angry arguments would ensue between the parties. Whether Mr. LaFleur is an alcoholic or is alcohol dependent was hotly contested. Mr. LaFleur points to the court-ordered substance abuse evaluation with Dr. Haymes which concluded that there was a low probability that Mr. LaFleur has a Substance Abuse Disorder. Dr. Haymes relied primarily on personality testing to come to this conclusion. Perhaps it is a matter of semantics, but the results of this testing are not supported by the facts. Although he is still a young man, Mr. LaFleur has had three arrests as a result of alcohol and has had significant marital discord caused by excessive drinking. It does not require an alcohol evaluation to know that Mr. LaFleur has a problem with alcohol. Dr. Humphrey made a DSM diagnosis of Alcohol Dependence for Mr. LaFleur.
The good news is that Mr. LaFleur has belatedly recognized that he should not drink alcohol. He has not had a drink since November 2000. Whether he can maintain sobriety after the pressure of the case is over is a concern. For this reason, the Guardian Ad Litem, the Family Services evaluator and the family psychological evaluator all recommended that Mr. LaFleur's visitation rights be restricted to day-time visits until he has successfully completed a six month outpatient treatment program to help cement the gains which Mr. LaFleur has made in the past few months. The court agrees with these recommendations.
Another issue in the case involved statements made by Savannah to her mother that her father had touched her "peepee". This matter was referred to the Department of Children and Families for an investigation. In the absence of any physical evidence of inappropriate touching, DCF did not substantiate any abuse or neglect on Mr. LaFleur's part. Mr. LaFleur denied any inappropriate touching at trial. Although the reason for Savannah's statement remains a mystery, the court is not able to find CT Page 10023 that Mr. LaFleur engaged in any inappropriate touching of his daughter.
The next issue is whether Ms. LaFleur should be permitted to relocate to Colorado with Savannah. Ms. LaFleur wants to be closer to her family and to make a new start where she might have a lower cost of living. Mr. LaFleur opposes the relocation because it would limit his ability to visit his daughter. There are good reasons in support of the positions of both parties. This issue must be analyzed solely in terms of the best interests of Savannah. Because this is the initial custody determination, there is no need to engage in the burden-shifting analysis set forth in the landmark Connecticut relocation case of Ireland v.Ireland. 246 Conn. 413 (1998). Rather, the court must be guided by the dictates of Section 46b-56 (b) of the General Statutes:
In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . .
The Guardian Ad Litem supported Ms. Lafleur's desire to move to Colorado. The Family Services evaluator was against it. The family psychological evaluator did not take a position on this issue but he did feel that it would not be in Savannah's best interests to see her father as little as two weeks per year. The parties do not have the financial resources to permit frequent visits between father and daughter if Savannah were living in Colorado. On balance, it appears that Ms. LaFleur has recently become more willing to remain in Connecticut. She has a job that she enjoys where she has made friends who have been able to offer her support through the stress of this case. She made it clear to the court that she would not move to Colorado if Mr. LaFleur is granted unsupervised visitation with Savannah in Connecticut. It is in Savannah's best interests to grow up where she will be able to have frequent and consistent contact with both of her parents.
The State of Connecticut did not appear at trial. It appears that there are no sums owed to the State of Connecticut as a result of Ms. LaFleur's receipt of state assistance.
The court finds that the following orders are in the best interests of the minor child, Savannah:
1. The marriage of the parties is dissolved.
 2. The parties shall share joint legal custody of the minor child, Savannah; however, when they have reached an impasse in decision making on matters pertaining to CT Page 10024 Savannah's education, medical and dental care, religious training, discipline, and moral values, Ms. LeFleur shall be the final decision maker. Prior to making a final decision on these matters, Ms. LeFleur must confer with Mr. LeFleur and consider his opinions and recommendations with a view to arriving at a harmonious policy calculated to promote the best interests of the minor child.
 3. Ms. LeFleur may not relocate Savannah's residence from the State of Connecticut without prior court approval.
 4. Mr. LaFleur shall have access to Savannah for parenting time as follows:
 A. On Thursdays, Mr. LaFleur will pick up the minor child, Savannah, at 3:00 p.m. at Savannah's daycare center, Catholic Family Charities in Wethersfield. Mr. LaFleur will return Savannah to her mother at 7:30 p.m. at the Hartford Police Station.
 B. On Fridays, Mr. LaFleur will visit with Savannah from 5:30 p.m. until 8 p.m. The parents will meet for drop-off and pick-up at the Hartford Police Department.
 C. On Sundays, Mr. LaFleur will visit with the minor child from 9 a.m. until 7 p.m. The parents will meet for drop-off and pick-up at the Hartford Police Department.
Using the Hartford Police Station for transitions is less than ideal. However, the parties did not give the court any reasonable alternatives. Within the next 15 days the parties are ordered to engage in mediation with Attorney Diana, the Guardian Ad Litem, to try to select an alternative site which is mutually agreeable. If the parties are unable to come to an agreement, either party may file a motion to have this issue heard by the court.
The court will retain jurisdiction of this file for one year for the purpose of hearing a motion to modify visitation should such a motion be filed once Mr. LaFleur successfully completes a six month outpatient chemical abuse program under the supervision of a certified drug and alcohol counselor. Such a motion should be filed at the Regional Family Trial Docket. CT Page 10025
 5. Mr. LeFleur shall pay to Ms. LeFleur child support, by immediate wage withholding, in the amount of $120 per week, which sum is in accordance with the Child Support Guidelines. In addition, Mr. LaFleur shall pay 47% of the total daycare expense incurred by Ms. LaFleur. The present daycare expense incurred by Ms. LaFleur is $35 per week. Therefore, Mr. LaFleur's present obligation is $16 per week. However, the court expects this figure to change overtime, and that Mr. LaFleur's obligation will be adjusted accordingly.
 6. Mr. LeFleur shall provide such medical insurance for Savannah as is available at his place of employment. If Mr. LeFleur is unable to provide medical insurance, Ms. LeFleur shall provide such insurance for the child as is available to her at her place of employment or through the Husky plan if she qualifies.
 7. Ms. LeFleur shall pay the first $100 of unreimbursed medical expenses each year. Thereafter, the parties will share the unreimbursed medical expenses in the following percentages: 47% by Mr. LaFleur and 53% by Ms. LaFleur.
 8. Both parties shall name the minor child, Savannah, as the beneficiary of such group life insurance as may become available to him/her at his/her place of employment.
9. Neither party shall pay alimony to the other party.
 10. Each party shall pay the debts shown on his or her own financial affidavit and hold the other harmless thereon. Each party shall pay and hold the other harmless on any debt accrued by him or her alone subsequent to the date of separation.
11. The parties shall each pay their own counsel fees.
 12. Each party shall pay one-half of the outstanding fees of Dr. Stephen M. Humphrey, which fees are found to be fair and reasonable. Therefore, each party owes $625 to Dr. Humphrey which shall be paid within 60 days or in accordance with a payment schedule which is CT Page 10026 acceptable to Dr. Humphrey.
 13. Each party shall pay one-half of the outstanding fees of the Guardian Ad Litem, which fees are found to be fair and reasonable. Therefore, each party owes $5720 to Attorney Diana within 60 days or in accordance with a payment schedule which is acceptable with Attorney Diana.
 14. The parties shall alternate the dependency exemption for Savannah with Mr. LaFleur taking the exemption for the 2001 tax year.
BY THE COURT,
JOHN W. PICKARD JUDGE OF THE SUPERIOR COURT