[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION (#206) FOR MODIFICATION OF VISITATION — POST JUDGMENT
The marriage of the parties was dissolved by a judgment of this court (Moraghan, J.) entered on May 25, 2000.
At the time of the judgment, the court entered certain orders concerning custody and visitation. Specifically, the parties were awarded joint legal custody of their two minor children Nicole and Gregory. The children's primary residence was to be with the defendant, their mother, and the plaintiff-father was awarded reasonable, liberal and flexible rights of visitation as made more specific in a written stipulation of the parties dated May 25, 2000 which was incorporated into the judgment.
Since the date of the judgment, the parties' daughter has attained of age of majority and is no longer within the jurisdiction of this court.
The defendant-mother has moved this court to modify the visitation rights of the plaintiff-father.
More particularly, she has moved the court for permission to relocate herself and her minor child, Gregory, to the greater St. Petersburg area of Florida and that appropriate new visitation orders enter.
The parties appeared with counsel and offered evidence and testimony regarding this motion. The minor child was represented by counsel, notwithstanding a somewhat ambiguous provision in the parties' stipulated agreement, they stipulated that the criteria of Ireland v. Ireland,246 Conn. 413 (1998) shall apply. CT Page 8926
The evidence and testimony permits this court to make the following findings.
The minor child, Gregory, has resided primarily in the defendant's residence and the plaintiff has had frequent and almost spontaneous parenting time with his son.
The plaintiff currently resides in a rented two bedroom home with his companion. The minor child spends frequent overnights in that home, and occasionally, the parties' older child, Nicole, joins the group allowing the siblings time together. Nicole otherwise resides in New York City where she attends college.
At the time of the dissolution, the defendant had been a homemaker and had no appreciable job skills. Since that date, she has worked in two entry level clerical positions. She has recently studied for and obtained a CNA through the Danbury Hospital nurse's aide program.
She is now qualified to be employed as a nurse's aide. She testified that the average compensation for such employment in the Danbury area is approximately $10 to $13 per hour. She further testified that comparable employment in the "greater St. Petersburg area pays approximately $7 to $12 per hour to start and that many employment opportunities are currently available in Florida.
At the time of the dissolution, the plaintiff's average annual income was approximately $104,000 at Praxair, Inc. The plaintiff was subsequently terminated from that employment for inappropriate conduct. His current annual income is approximately between $45,000 to $50,000.
As a result of his termination and reduced income, the plaintiff sought and obtained an appreciable reduction in his alimony and child support payments to the defendant.
His child support obligation went from $245 per week to $75 per week, and his alimony obligation went from approximately $330 per week to $125 per week. The child support obligation was reduced, in part, by the fact that one of two children reached the age of majority, terminating that support obligation.
The parties were required to invade the 401(K) pension of the plaintiff on a monthly basis to pay the $1406 to maintain the cost of the marital residence. The mortgage is currently in default.
The defendant cannot find alternative living quarters comparable to the CT Page 8927 marital residence within her financial means in the Danbury area. Her only option is a rent in a low income multi-family housing where it is unlikely she will be able to keep the family's two pet dogs.
The defendant seeks to move to St. Petersburg, Florida where several of her family members reside, including her mother and a sister, brother and aunt and their respective families.
She testified that housing costs in that region are considerable less than in Connecticut and within her financial means.
She further testified that her inquiry of the Florida high schools indicated that they offer traditional courses of study and, in addition, technical courses which would be very interesting and beneficial to the child.
The defendant believes that both she and her son would benefit socially, emotionally and financially from the requested relocation.
The defendant-mother was not being vindictive or punitive by her testimony, that it is due in large part to the plaintiff's termination from his employment that her relocation to Florida is now necessary and, more importantly, in the best interests of their minor son. She pointed out, in a rather matter of fact way, that as a result of the severe reduction in his income, her financial picture has been seriously impacted. His financial downturn directly resulted in a reduction of the child support and alimony she received. It also contributed to further reductions in the 401(K) asset, and it also contributed to the inability to maintain the mortgage on the marital residence.
The parties' financial picture has changed dramatically for the worse, and it is not due in any way to the defendant's acts.
The evidence and testimony permits the court to find that the defendant, the custodial parent, has demonstrated by a preponderance of the evidence, the legitimate purposes for relocation and, further, that the proposed location, the greater St. Petersburg, Florida area, is reasonable for that purpose.
The plaintiff offered evidence and testimony which permits the court to find that his relationship with his minor son is very important to each of them — now more than ever. The court also finds that the minor child's relationship with his older, college-age sister has matured and grown stronger. Those relationships, together with those of his friends and acquaintances, are positive factors in his life. However, they must be considered together with the other family ties and relationships which CT Page 8928 are available to him upon his relocation to Florida. Additionally, factors to be weighed are the potential advantages in his living accommodations, academic choices and family finances.
Having considered the evidence offered by the plaintiff, the court finds that the plaintiff has failed to show, by a preponderance of the evidence, that the relocation proposed by the defendant is not in the best interests of the minor child.
It is obvious to the court that the extreme distance between Danbury and St. Petersburg, Florida and the limited resources available to the plaintiff to meet travel expenses, mean that the proposed relocation would effectively nullify the existing court ordered shared parenting agreement of the parties.
Notwithstanding that fact, the court finds that the overall effect of the relocation to the St. Petersburg, Florida area would be in the best interest of the minor child at the present time.
For the foregoing reasons, the defendant's motion to modify visitation with the minor child is hereby granted.
The court is without the benefit of current proposed orders from either party regarding a modified visitation schedule.
The parties are to make a good faith effort to agree upon a stipulated visitation schedule.
If they are unable or unwilling to do so, this matter is referred to the Family Relations office and the parties are to cooperate with the efforts of that office to facilitate an agreement.
If the parties are unable to reach an agreement as to specific visitation orders, the matter shall be referred back to this court for further proceedings.
BY THE COURT,
Joseph W. Doherty, Judge